**Leann M. SCHWEITZER–RESCHKE, Plaintiff,**

v.

**AVNET, INC., d/b/a Hamilton–Hall–Mark, formerly Hall–Mark Electronics Corporation, and Steve Lasswell, Defendants.**

No. 93–2519–JWL.

United States District Court, D. Kansas.

Jan. 6, 1995.

Pantaleon Florez, Jr., Florez & Frost, P.A., Topeka, KS, for Leann M. Schweitzer–Reschke.

Steven G. Piland, Law Offices of Daniel P. Hanson, Overland Park, KS, Ronald M. Gas-

wirth, T. Michele Baird, Gardere & Wynn, L.L.P., Dallas, TX, Sheryl C. Nelson, Mark W. Untersee & Associates, P.C., Kansas City, MO, for Avnet, Inc. and Steve Lasswell.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

This is a discrimination action in which the plaintiff, Leann M. Schweitzer–Reschke, seeks relief under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and the Kansas Acts Against Discrimination, K.S.A. § 44–1001 *et seq.* ("KAAD"), against the defendants Avnet Inc., d/b/a Hamilton Hall–Mark, formerly known as Hall–Mark Electronics Corp. ("Hall–Mark"), and defendant Steve Lasswell for alleged sexual harassment and constructive discharge. She also brings a claim of negligent infliction of emotional distress under Kansas law against these defendants. Defendants have moved for summary judgment on all of plaintiff's claims (Doc. # 25). For the reasons set forth fully below, defendants' motion is granted.[1]

### I. *Factual Background*

The following is a brief summary of uncontroverted facts or facts considered in the light most favorable to plaintiff. Plaintiff, Leann Schweitzer–Reschke, worked for defendant Hall–Mark from 1989 to 1992. For most of that time she was a Product Manager, a position which required her to maintain a good business relationship with representatives of the companies or vendors which supplied products to Hall–Mark. Throughout the entire term of her employment, plaintiff received at least average and acceptable ratings for her work.

In the late spring of 1992, defendant Lasswell, plaintiff's supervisor and the Branch Manager, reassigned one of plaintiff's product lines to another product manager, hampering plaintiff's ability to make money in her position. Plaintiff testified that she was told that the line was taken away from her because she was too young and not knowl-

edgeable enough to deal with this particular representative and that another female employee with more experience who "knew how to suck up and schmooze and kiss ass to this rep" would get the line. Plaintiff further testified that with respect to this same representative, Mr. Lasswell told her that she did not have what it took to "get the special pricing from him, to flirt with him, to build better relationships with him, to do whatever it takes."

Plaintiff stated that Mr. Lasswell had previously told her with regard to this representative to "wear shorter skirts, bat my eyes, flirt with him any way I could to get special pricing and to make him feel good." She interpreted him to mean that she should make this vendor think that she "liked him and liked him a lot." She believed it inappropriate to make a representative think she "wanted him" in order to improve her working relationship with him. She also complained that Mr. Lasswell would periodically tell her she needed to be a "hard ass" or more of a "bitch" to get quotes on time and to get the product on time and that she needed to be more like the previous product manager who "had a way with men." Plaintiff testified that every week for about a year, Mr. Lasswell would ask her about the man who is now her husband (Mr. Lasswell called him "Slinky") and would make unwanted comments or inquiries about whether or not she had had sex the previous weekend. She also testified that Mr. Lasswell would routinely make comments to at least one other female employee referring to that employee's weekends and whether "she was going to do crazy things as far as sexually with [other] people."

In January of 1992, plaintiff was required to participate in an advertising campaign involving the Motorola Company in which the slogan was "Kiss those babies and win those votes." A picture of plaintiff was taken with her face over the body of a baby doll. Plaintiff made it known that she did not wish to appear in the picture. The lead representative for Motorola and Mr. Lasswell also ap-

---

**1.** Plaintiff has abandoned her claim of outrage and, thus, defendants' motion for summary judg- ment on this claim is also granted.

peared in the picture, but they posed as "politicians" and not as babies.

Plaintiff testified to a few incidents in which she had disagreements or confrontations with Mr. Lasswell with regard to her job and her job performance. She testified that at times his behavior was "harassing," although not necessarily sexually harassing, and demeaning or humiliating.

Hall–Mark had a formal policy and procedure for reporting claims of sexual harassment in the workplace. Plaintiff was fully aware of this procedure but did not make a formal complaint.

Plaintiff tendered a notice of resignation on July 22, 1992. The day before she had been about two hours late for work and was called to Mr. Lasswell's office. Her husband's car had broken down early that morning and she had felt it necessary to drive her husband to work. Plaintiff testified that:

> About 3:30, he called me in to his office—first, he came by my desk and he said, "Slinky"—as he referred to him, had cost him money, and I said "How," and he said, "Come into my office and [I'll] tell you." I went in his office, and he said, again, that he cost him money because I was gone for two hours that morning where I could have used that two hours booking business or getting better pricing or schmoozing or whatever it was that I was to be doing, and he said that he owned me from 8 to 5, and I said, "Can I leave at 5, then, because I'm always there late and there's never a problem," and he said, "You can leave right now if you want." The conversation started getting rather heated....

■ Plaintiff contends that while Mr. Lasswell never requested sexual favors from her, he did create a hostile work environment that amounted to sexual harassment under Title VII.[2] She further contends that Mr. Lasswell's "inappropriate sex based conduct" created intolerable working conditions such that a reasonable person in plaintiff's position would have felt compelled to resign. Finally, plaintiff contends that the defendants have

---

2. Defendants have objected to portions of two affidavits submitted by plaintiff in support of her motion. Federal Rule of Civil Procedure 56(e) requires that affidavits in support of or in opposition to a summary judgment motion be based on personal knowledge and set forth facts that would be admissible in evidence. Fed.R.Civ.P. 56(e). Hearsay evidence in such affidavits is entitled to no weight. *Pan–Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539, 556 (5th Cir.1980), *cert. denied*, 454 U.S. 927, 102 S.Ct. 427, 70 L.Ed.2d 236 (1981). Evidence in the affidavit intended to raise a genuine issue of fact must be specific. *Leonard v. Dixie Well Serv. & Supply, Inc.*, 828 F.2d 291, 295 (5th Cir.1987). "General conclusory allegations ... do not become sufficient simply because they are put in affidavit form and stated by someone other than the Plaintiff." *Castillo v. Bowles*, 687 F.Supp. 277, 280 (N.D.Tex.1988), *cert. denied*, 493 U.S. 827, 110 S.Ct. 92, 107 L.Ed.2d 57 (1989). In light of this standard, the court rules as follows on defendants' objections:

(1) Cindy Corber Affidavit—on its face, Ms. Corber's affidavit confirms that she was not an employee of defendant during any of the period that Mr. Lasswell was plaintiff's manager. There has been no showing made that Ms. Corber has direct personal knowledge of much of the conduct mentioned in the affidavit. Also, if based on personal knowledge, much of the comments allegedly made would have to have occurred when Mr. Lasswell was not plaintiff's manager and, thus, are irrelevant to plaintiff's claims and should not be considered.

Conduct referred to in paragraph 5 clearly occurred before Mr. Lasswell was plaintiff's supervisor and did not occur in plaintiff's presence, and, thus is irrelevant and is struck. Paragraphs 8, 9, 12, 13, 14, 15, and 16 merely corroborate plaintiff's testimony. Because plaintiff's testimony is taken as true, such evidence is merely cumulative for purposes of this motion. To the extent that any of these paragraphs attempt to establish that certain alleged misconduct occurred more frequently than plaintiff testified to in her deposition, they shall not be considered for two reasons: (1) lack of any evidence of personal knowledge that the conduct occurred; and (2) they are general conclusions and lack the specificity required to create a genuine issue of material fact. Paragraph 10 appears to be hearsay and, absent some showing of personal knowledge, does not qualify as appropriate affidavit testimony and defendants' objection is sustained.

(2) Jennifer Rose Taylor Affidavit—Ms. Taylor did not work for defendant while plaintiff was employed there. The court fails to see how she could have any personal knowledge of the events at issue here and she states no basis for such knowledge in the affidavit. Absent any showing of personal knowledge, defendants' objection to her affidavit is sustained.

As to any objections to plaintiff's attorney's characterization of plaintiff's testimony, defendants' objections are overruled. The court can sufficiently discern allegations which have been supported with evidence from those which have not.

negligently inflicted emotional distress upon her and that she is entitled to relief on this basis as well. Defendants deny plaintiff's allegations and move for summary judgment on all three remaining claims: sexual harassment, constructive discharge and negligent infliction of emotional distress.

## II. DISCUSSION

### A. Summary Judgment Standard

■■■ Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *Anthony v. United States*, 987 F.2d 670, 672 (10th Cir.1993). The court views the evidence and draws any inferences in a light most favorable to the party opposing summary judgment, but that party must identify sufficient evidence which would require submission of the case to a jury. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–52, 106 S.Ct. 2505, 2510–12, 91 L.Ed.2d 202 (1986); *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir.1991). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 533 (10th Cir.1994) (citing *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2510–11). The relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. at 2511–12.

### B. Sexual Harassment

■■■ Two principal theories of sexual harassment may be shown under Title VII [3]: quid pro quo discrimination and hostile work environment. *Martin v. Nannie and the Newborns, Inc.*, 3 F.3d 1410, 1414 (10th Cir. 1993) (citing *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49

(1986)). Plaintiff's claim here is based on the latter theory. To make a prima facie case of hostile work environment under Title VII, plaintiff must show that: (1) she is a member of a protected group; (2) the conduct in question was unwelcome; (3) the harassment was based on sex; (4) the harassment was sufficiently severe or pervasive to create an abusive working environment; and (5) that some basis exists for imputing liability to the employer. *See Schindler v. Larry's IGA, Inc.*, No. 92–1033–PFK, 1994 WL 324563, at *2 (D.Kan. June 16, 1994); *Ball v. City of Cheyenne*, 845 F.Supp. 803, 809 (D.Wyo.1993) (citing *Paroline v. Unisys Corp.*, 879 F.2d 100, 105 (4th Cir.1989)).

■■■ To prevail under a hostile work environment theory, plaintiff must show that sexual conduct had the "purpose or effect of unreasonably interfering" with her work performance or created an "intimidating, hostile, or offensive working environment." *Martin*, 3 F.3d at 1414. Sexual harassment is actionable where the "workplace is permeated with 'discriminatory intimidation, ridicule, and insult, ... that is sufficiently severe and pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Systems, Inc.*, —— U.S. ——, ——, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993). Casual or isolated manifestations of a discriminatory environment are not sufficient to demonstrate a hostile working environment under the law. *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1414 (10th Cir.1987). "Whether the sexual conduct complained of is sufficiently pervasive to create a hostile or offensive work environment must be determined from the totality of the circumstances." *Sauers v. Salt Lake County*, 1 F.3d 1122, 1126 (10th Cir.1993). These may include:

> ... the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere

---

3. Plaintiff has asserted identical claims of sexual harassment under both Title VII and the KAAD. Kansas state courts interpreting the anti-discrimination provisions of the KAAD have applied the same analyses as those used in Title VII cases in federal court and look to federal court opinions as persuasive authority regarding comparable issues pursuant to the KAAD. *Woods v. Midwest*

*Conveyor Co., Inc.*, 231 Kan. 763, 767, 648 P.2d 234, 239 (1982). For purposes of this motion, the court's analysis of plaintiff's sexual harassment and constructive discharge claims under Title VII will apply equally to those claims pursuant to the KAAD. Neither plaintiff nor defendants contend that a different analysis is required under the Kansas statute.

offensive utterance; and whether it unreasonably interferes with an employee's work performance.

*Harris*, —— U.S. at ——, 114 S.Ct. at 371. These factors are evaluated from both a subjective and an objective viewpoint. The court must consider not only the effect the discriminatory conduct actually had on the plaintiff, but also the impact it likely would have had on a reasonable employee in the plaintiff's position.[4] *Id.* at ——, 114 S.Ct. at 370. Evidence of a general work atmosphere, in addition to evidence of specific hostility directed at the plaintiff, may be considered in evaluating the claim. *Daemi v. Church's Fried Chicken, Inc.*, 931 F.2d 1379, 1385 (10th Cir.1991).

▪ Plaintiff's evidence of discriminatory conduct on the part of Mr. Lasswell includes inquiries as to her sex life; statements that she "schmooze" and "kiss up" to vendor representatives and that she do what she had to do to get the right quotes, even wear a shorter skirt; and that Mr. Lasswell required her to pose in a picture that portrayed her as a baby. If taken individually and in isolation, these alleged instances of misconduct, even if offensive and inappropriate, would not be considered sufficiently severe or overtly hostile enough to be actionable. Relatively isolated instances of non-severe misconduct will not support a hostile work environment claim. *Saxton v. American Tel. & Tel. Co.*, 10 F.3d 526, 533 (7th Cir.1993). However, misconduct that is relatively less severe may become actionable, especially when the alleged misconduct is that of a supervisor, when it is so frequent and pervasive that it affects an employee's work environment. With that in mind, the court finds, nevertheless, that considering the totality of the circumstances, plaintiff has not met her burden on summary judgment to show that Mr. Lasswell's misconduct was sufficiently

severe or pervasive such that a reasonable person in her position would conclude that it poisoned the work atmosphere and altered her conditions of employment.

▪ Plaintiff has shown that she was required to pose for an ad in which she was depicted as a "baby." She expressed her disapproval of appearing in the ad, but was required to in any event. She appeared in this ad only on one occasion. Plaintiff admitted in her testimony that she did not perceive anything sexual about the ad, but only objected to it because she believed it was demeaning. While probative of plaintiff's claim that Mr. Lasswell's overall treatment of her was demeaning, in and of itself, this incident does not establish a hostile work environment based on plaintiff's gender.

▪ There is also evidence that Mr. Lasswell told plaintiff to wear a shorter skirt and bat her eyes. It cannot be disputed, however, that this occurred only on one occasion in the context of a discussion about her ability to deal with a particular vendor representative with whom plaintiff admits she had a poor relationship. There is also evidence that not only Mr. Lasswell, but also two female supervisors, considered plaintiff's ability to deal with vendors an area which needed improvement. There is no evidence to indicate that these perceptions were inaccurate. Plaintiff herself testified to the importance of these relationships by stating that in her sales-related position they were "the lifeline of where we got the pricing for the products." In this context, the court is not prepared to find that one inappropriate reference to the height of plaintiff's skirt or to the batting of her eyes rises to the level of an actionable claim of sexual harassment. Of course, plaintiff does not contend that these two instances are alone sufficient to support her claim, but rather that they contributed to

---

4. Although the conduct must be sufficiently severe or pervasive, the plaintiff need not prove that she was psychologically injured:

> Title VII comes into play before the harassing conduct leads to a nervous breakdown. A discriminatorily abusive work environment, even one that does not seriously affect employees' psychological well-being, can and often will detract from employees' job performance, discourage employees from remaining on the

job, or keep them from advancing their own careers. Moreover, even without regard to these tangible effects, the very fact that the discriminatory conduct was so severe or pervasive that it created a work environment abusive to employees because of their ... gender .... offends Title VII's broad rule of workplace equality.

*Harris*, —— U.S. at ——, 114 S.Ct. at 370–71.

an overall hostile work atmosphere. Thus, the court considers these incidents in light of other alleged discriminatory conduct which appears to have occurred more frequently.

The only conduct which was arguably repeated or ongoing was Mr. Lasswell's inquiries into plaintiff's and another female employee's sex life and his comments that she needed to "schmooze" and "flirt" with the various representatives. Telling an employee to "schmooze," "kiss ass" and "suck up" to vendors is not on its face *sexually* offensive, nor under the circumstances of this case, does it appear discriminatory. Conduct complained of need not be clearly sexual in nature to be relevant to a charge of hostile environment sexual harassment. *Hicks*, 833 F.2d at 1415. However, it must at least be shown that the conduct amounts to unequal treatment which, but for plaintiff's sex, would not have occurred. *Id.* Plaintiff has made no showing that these comments would not have occurred but for plaintiff's sex.

There is little evidence that Mr. Lasswell's comments about schmoozing, flirting and even wearing a shorter skirt were directed at or motivated by plaintiff's gender. There is no evidence that terms like "schmooze," "suck up" and "flirt" were used solely with regard to female representatives or with regard to the plaintiff. There is evidence, however, that his comments were motivated solely by a desire to have plaintiff improve her relationships with vendors and her productivity in general. From the evidence, it appears Mr. Lasswell was equally as inclined to tell a male employee to suck up, schmooze, even flirt and dress in a particular manner as he would a female employee.[5] It is pure speculation whether his comments to plaintiff

were motivated by gender bias or even whether the comments should be characterized as gender based. The court by no means sanctions the sales tactics Mr. Lasswell seems to have encouraged. Such tactics may contribute to an offensive or even "hostile" environment. However, absent some evidence that the hostility derived from some gender-based animosity or bias, it cannot be said that the conduct violates Title VII.

Plaintiff also argues that Mr. Lasswell's comments regarding plaintiff's and another employee's sex life contributed to a hostile work environment. A reasonable person undoubtedly could find these comments inappropriate. This does not mean, however, that a reasonable jury, considering all of the circumstances of this case, could find them to have created an objectively hostile work environment that altered the conditions of plaintiff's employment. Courts have found these types of comments under similar circumstances to be insufficient for actionable sexual harassment under Title VII. *See Saxton*, 10 F.3d at 534 (two unwelcome advances by supervisor and allegations that after plaintiff rejected the advances supervisor refused to speak with her, treated her in a condescending manner, and teased her about her romantic interest in a co-worker insufficient upon summary judgment); *Weiss v. Coca–Cola Bottling Co. of Chicago*, 990 F.2d 333, 337 (7th Cir.1993) (supervisor inquiring about plaintiff's personal life, complimenting her and telling her how beautiful she was, asking her on dates, calling her a "dumb blond," and placing "I love you" signs in her work area insufficient to show hostile work environment as a matter of law).[6]

---

**5.** For example, there is evidence that Mr. Lasswell encouraged at least one male employee to develop an intimate relationship with a customer. A field applications engineer told Mr. Lasswell that he believed a female customer "wanted him." Mr. Lasswell allegedly told the engineer to "go for it" for maybe they would get "more orders."

**6.** The court points out that although plaintiff contends these comments were objectionable and happened over an extended period of time, she never expressed or in any way indicated to him that she considered these comments inappropriate. There is no evidence that plaintiff believed

that expressing disapproval would be futile or that she would suffer adverse consequences as a result. Nor is there evidence that plaintiff felt either inhibited or afraid to speak up with regard to these kinds of comments simply because Mr. Lasswell was her supervisor. To the contrary, there is evidence that plaintiff was willing to express her discontent when warranted, as she was able to tell Mr. Lasswell not to call her boyfriend "Slinky" and expressed disapproval upon being placed in the Motorola ad. Plaintiff's claim that these arguably joking comments were harassing loses force when considered under these circumstances.

In applying the evidence to the factors set out by the Supreme Court in *Harris*, the court is simply unable to conclude that plaintiff has met her burden to show that the conduct of Mr. Lasswell was sufficiently severe or pervasive to recover under Title VII. Being told to wear a shorter skirt and to appear in the ad, as well as being subjected to other comments by Mr. Lasswell, was "merely offensive." *Harris*, — U.S. at —, 114 S.Ct. at 370. The comments made on multiple occasions were inappropriate, but were not severe and had little impact upon the plaintiff. Simply because some of the comments were made on more than one occasion does not mean that a hostility pervaded [7] the work environment. There is no evidence that the misconduct of Mr. Lasswell affected plaintiff's ability to do her job.[8] Absolutely none of the conduct was physically threatening, nor has there been any offensive touching or unwelcome sexual advances even alleged. Considering the totality of the circumstances the alleged incidents of misconduct were relatively isolated and do not rise to the level of actionable sexual harassment.

While she has shown that she was subject to inappropriate and offensive behavior, plaintiff has not shown that her legal rights have been violated. *See Ballou v. University of Kansas Medical Ctr.*, 871 F.Supp. 1384 (D.Kan.1994) (conduct of supervisor, including making advances towards plaintiff which were rejected, calling her, asking to kiss her, walking by her desk 30–40 times a day, waiting for her to arrive for work and following her into the office, repeatedly staring at her and sitting on her desk and leaning close to her, was merely offensive conduct and not sufficiently severe or pervasive as a matter of law). Even if all of plaintiff's allegations in support of her hostile work environment sexual harassment claim are accepted as true, the court finds that the alleged conduct was not sufficiently severe or pervasive to alter the conditions of plaintiff's employment.

### C. Constructive Discharge

 Plaintiff contends that the hostile environment to which she was subjected forced her to leave Hall–Mark and led to her constructive discharge. An employee who is not formally discharged from employment may still be constructively discharged if the employee was forced to quit due to gender-based intolerable working conditions. *Derr v. Gulf Oil Corp.*, 796 F.2d 340 (10th Cir. 1986). In order to establish a claim of constructive discharge under Title VII, plaintiff must show that the defendant's conduct produced working conditions that a reasonable person would view as intolerable. *Daemi*, 931 F.2d at 1386. The intolerable conditions

---

The court by no means intends to imply that a plaintiff must always speak up and confront her harasser in order to complain later about misconduct. However, the court does not believe it improper or unfair, in trying to determine whether particular conduct was severe or pervasive under a "totality of the circumstances" approach, to infer that certain comments were not particularly offensive to the plaintiff when she never indicated the comments were unwelcome and was clearly willing or able to express disapproval with regard to similar or related types of comments.

7. *Merriam Webster's Collegiate Dictionary* 868 (10th ed. 1993), defines the term "pervasive" as "to become diffuse throughout every part of." Even if Mr. Lasswell made some comments to plaintiff, broadly characterized as sexual in nature, on multiple occasions, this fact alone does not mandate a conclusion that the objectionable conduct was pervasive. A reasonable jury could not conclude that the objectionable conduct of Mr. Lasswell was diffuse throughout every part of the work environment in which plaintiff functioned.

8. Plaintiff alleges that she quit her job because of the discriminatory treatment by Mr. Lasswell. As discussed *infra* with regard to her claim of constructive discharge and negligent infliction of emotional distress, however, there is insufficient evidence that her leaving was the result of discrimination and little evidence that she suffered emotional distress as a result of the alleged sexual harassment by Mr. Lasswell. Thus, plaintiff's allegation that she quit because of discriminatory treatment is not evidence that her ability to perform her job was affected. The court is not suggesting that plaintiff must show that she suffered psychological injury for her hostile work environment sexual harassment claim, for clearly she need not do so. The court has simply considered the lack of objective evidence that her work suffered as a result of Mr. Lasswell's conduct, as distinguished from plaintiff's subjective belief that she was emotionally affected, as one factor in the totality of all circumstances surrounding her claim.

must be the result of the employer's illegal discriminatory acts, *Derr,* 796 F.2d at 344, and plaintiff must show a causal connection between her leaving and the employer's Title VII violation. *Wolf v. Burum,* No. 88–1233–C, 1990 WL 81219, at *9 (D.Kan. May 16, 1990).

Based on the conclusion that plaintiff has not established her hostile environment claim, she cannot recover on her claim of constructive discharge. *See Bolden v. PRC Inc.,* 43 F.3d 545, 552 (10th Cir.1994). Plaintiff has shown that she was unhappy at work and resigned because she did not want to deal with Mr. Lasswell any longer. "However, not every employee has an actionable claim of constructive discharge pursuant to Title VII. [Plaintiff] has failed to show how her resignation was the result of illegal discriminatory conduct." *Id.* (citing *Acrey v. American Sheep Indus. Ass'n,* 981 F.2d 1569, 1573–74 (10th Cir.1992). Defendants' motion for summary judgment on this claim is, therefore, granted.

### D. Negligent Infliction of Emotional Distress

■ Defendants also seek summary judgment on plaintiff's claim for negligent infliction of emotional distress, arguing that plaintiff cannot show that her alleged injuries do not rise to the level of physical injury necessary to sustain an action for negligent infliction of emotional distress under Kansas law; that as to Mr. Lasswell, no negligent conduct has been alleged; and that Kansas would not recognize a claim for negligent supervision against an employer where the underlying wrongful conduct is sexual harassment. Defendants' motion is granted on all three grounds asserted.

Judge Theis of this court has recently articulated the appropriate standard for measuring the validity of plaintiff's claim under Kansas law:

Kansas law has long held that there can be no recovery for emotional distress caused by the negligence of another unless accompanied by or resulting in physical injury. *Humes v. Clinton,* 246 Kan. 590, 598, 792 P.2d 1032 (1990) (citing cases). The physical injury must occur contempo-raneously with or shortly after the incident causing the emotional distress. *Payne v. General Motors Corp.,* 731 F.Supp. 1465, 1474 (D.Kan.1990). A claim for simple negligent infliction of emotional distress (as opposed to claims based upon intentional or wanton conduct) cannot stand in the absence of a physical injury. *Anspach v. Tomkins Industries, Inc.,* 817 F.Supp. 1499, 1509 (D.Kan.1993). There must be an actual physical injury to the plaintiff. *Bolin v. Cessna Aircraft Co.,* 759 F.Supp. 692, 716 (D.Kan.1991).

The purpose of the physical injury rule is to guard against fraudulent or exaggerated emotional distress claims. *Maddy v. Vulcan Materials Co.,* 737 F.Supp. 1528, 1534 (D.Kan.1990); *Freeman v. Kansas State Network, Inc.,* 719 F.Supp. 995, 1001 (D.Kan.1989). The rule also recognizes that emotional distress is a common experience in life and is usually trivial. Recovery is thus available only in those cases involving severe emotional distress evidenced and substantiated by actual physical injury. *Freeman,* 719 F.Supp. at 1001.

*Tyrrell v. Boeing Co.,* No. 91–1285–FGT, 1994 WL 114841, at *12 (D.Kan. March 24, 1994).

Plaintiff has not presented sufficient evidence that she suffered emotional injury in conjunction with an actual physical injury as a result of the alleged sexual harassment by Mr. Lasswell. Plaintiff contends that she suffered from diarrhea and vomiting as a result of the defendant's discriminatory conduct. However, the evidence indicates that she experienced diarrhea and vomited on only one occasion and that it was on a day in which there is no allegation of any sexually harassing conduct on the part of Mr. Lasswell.

Plaintiff testified that on the day she exhibited these symptoms, she and Mr. Lasswell had argued about whether she was going to be able to meet a specific sales goal. She testified that Mr. Lasswell had told her to ship products early in an effort to "make the number" and that she believed this approach was improper. She specifically testified that there was nothing "sexual" about the issue of making the number and making

the bonus, and that it would be an issue regardless of a person's sex. Plaintiff's vomiting and diarrhea, if causally related to any emotional injury at all, related to emotional distress arising from this specific incident.

■ The court simply believes it would be speculative to connect plaintiff's diarrhea and vomiting with her allegation of sexual harassment. Plaintiff has offered no evidence which would indicate that these symptoms happened for any reason other than the fact that she was being questioned about not making a specific goal. Plaintiff has not even alleged that she vomited or had diarrhea on any other day throughout the year she claims she was sexually harassed. Kansas requires that the actual injury be close in time or contemporaneous with the emotional harm which forms the basis of the cause of action. It would be speculative at best to connect the one evening plaintiff testified she "felt sick" with the emotional pain she contends she has suffered as a result of alleged sexual harassment.

The only other evidence [9] of physical impact upon the plaintiff is her testimony that she has had, at times, a general feeling of anxiety, a feeling of shortness of breath, rapid heartbeat or a sense of "my lungs, like, collapsing, a feeling like I can't breathe." [10] Plaintiff never sought medical treatment for any of these alleged symptoms, nor did she ever see a doctor for her emotional distress. The court believes that these generalized complaints are insufficient to create an issue of fact regarding actual physical injury under Kansas law. *See Anderson v. Scheffler,* 242 Kan. 857, 860, 752 P.2d 667, 669 (1988) (even though plaintiff suffered shock, emotional pain, feelings of guilt, had recurring nightmares and visited a doctor for depression, he had not shown actual physical impact suffi-

cient for claim of negligent infliction of emotional distress); *Hopkins v. State,* 237 Kan. 601, 612–13, 702 P.2d 311 (1985) (generalized physical symptoms of emotional distress such as headaches and insomnia are insufficient to state a cause of action); *see also Anderson v. Scheffler,* 242 Kan. 857, 860, 752 P.2d 667, 669 (1988) (generalized symptoms such as headaches, troubled sleep, difficulty concentrating and crying spells were insufficient to state a cause of action, even where plaintiff had visited with a counselor for treatment of her stress and other symptoms).

Even if plaintiff could show a physical injury, her claim against Mr. Lasswell would in any event fail. Plaintiff has alleged no negligent conduct on the part of Mr. Lasswell, only intentional conduct, and, thus, summary judgment would be granted to him on this ground as well.

■ In addition, the court finds that plaintiff cannot maintain a claim of negligent infliction of emotional distress against defendant Hall–Mark based on its alleged negligent retention or supervision of Mr. Lasswell.[11] While it appears that Kansas would recognize a cause of action holding an employer liable for negligent retention or supervision under certain circumstances, it is far from clear that Kansas would recognize or permit recovery against an employer for negligent infliction of emotional distress based on negligent supervision where the underlying wrongful conduct is sexual harassment by an employee. *Cf. Anspach v. Tomkins Industries, Inc.,* 817 F.Supp. 1499, 1519–20 (D.Kan.1993) (refusing to hold employer liable for negligence based on employee's violation of Title VII). If faced with the issue, the court believes Kansas would not expand the scope of employer liability to include negligent infliction of emotional distress

---

9. The court notes that there is some evidence in the record that plaintiff experienced cold sores. Plaintiff does not assert in her papers that these were attributable to any emotional distress she has suffered, probably because she could not support such a contention with sufficient evidence. Plaintiff testified that she is prone to such sores and had them frequently before she began working under Mr. Lasswell. There is simply no basis in fact to link these cold sores with her alleged emotional distress from the discriminatory conduct of the defendants.

10. Plaintiff does not, in fact, advance this evidence as support for her claim of physical injury in her motion papers.

11. Although plaintiff claims her basis for holding Hall–Mark liable for intentional infliction of emotional distress is negligent supervision, she has not attempted to set forth any legal argument addressing whether and to what extent Kansas would recognize this cause of action.

based on negligent retention or supervision of an employee where the aggrieved plaintiff already has an adequate remedy under Kansas statutory law. Pursuant to the KAAD, an aggrieved party may bring an action against an employer for sexual harassment. K.S.A. § 44–1001 *et seq.* Kansas courts would not recognize a tort to accomplish the same purpose. *Cf. Polson v. Davis,* 895 F.2d 705, 709–10 (10th Cir.1990) (extension of recovery under tort of wrongful discharge not permitted where it would transgress the KAAD, adequate and exclusive remedies under the KAAD precluded recovery); *see also Beam v. Concord Hospitality, Inc.,* 93–4188–SAC, 1994 WL 129979, at *6 (D.Kan. March 29, 1994) (no cause of action exists under Kansas common law for failure to provide a safe work place arising out of incidents of sexual harassment on the job, but declined to rule on negligent supervision issue) (citing *E.E.O.C. v. General Motors Corp.,* 713 F.Supp. 1394, 1396 (D.Kan.1989)).

### III. Conclusion

**IT IS THEREFORE ORDERED BY THE COURT** that defendants' motion for summary judgment (Doc. # 25) is granted.