Veronica **HERNANDEZ**, Plaintiff,

v.

**McDONALD'S CORPORATION,**
Defendant.

Civil Action No. 95–2499–GTV.

United States District Court,
D. Kansas.

Aug. 22, 1997.

Paul F. Pautler, Jr., Kimberley A. Jones, Blackwell, Sanders, Matheny, Weary & Lombardi, L.L.P., Kansas City, MO, Timothy M. O'Brien, Shook, Hardy & Bacon, L.L.P., Overland Park, KS, Paul D. Seyferth, Dutro E. Campbell, II, Husch & Eppenberger, Kansas City, MO, Mark A. Corder, Olathe, KS, for Plaintiff.

Lisa White Hardwick, Shook, Hardy & Bacon, L.L.P., Kansas City, MO, Melissa A. Taylor, Shook, Hardy & Bacon, L.L.P., Overland Park, KS, for Defendant.

## MEMORANDUM AND ORDER

VAN BEBBER, Chief Judge.

Plaintiff brings this action asserting claims of gender discrimination, sexual harassment, race discrimination, national origin discrimination, and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* She also asserts a claim under the Equal Pay Act, 29 U.S.C. § 206 *et seq.*, as well as a claim for negligent infliction of emotional distress under Kansas common law. The case is before the court on defendant's motion for summary judgment (Doc. 85). For the reasons set forth below, the motion is granted.

### I. Factual Background

The following facts are either uncontroverted or are based on evidence viewed in light most favorable to the plaintiff. Immaterial facts and facts not properly supported by the record are omitted.

Plaintiff Veronica Hernandez, a forty-one year old Mexican–American Hispanic female, commenced employment as a personnel coordinator with defendant McDonald's Corporation on October 26, 1988. Plaintiff's primary responsibilities entailed recruiting crew personnel (i.e., non-management, entry level employees) for certain McDonald's restaurants in the Kansas City Region. Of the four personnel coordinators in the region, plaintiff had the highest salary.

During her first two years of employment with the company, plaintiff reported to various store managers and area supervisors. In mid–1991, plaintiff began reporting directly to Scott Radel, whom defendant had named

as personnel manager of the Kansas City Regional Office approximately eighteen months earlier. In October 1991, Radel hired Kathy Tarantino as a personnel supervisor in the Kansas City Regional Office, and frequently assigned her to work as plaintiff's "informal supervisor."

Plaintiff had expressed an interest in the region's personnel supervisor position prior to the time defendant hired Tarantino for the job. Throughout her employment, plaintiff also expressed an interest in being placed on the company's "fast-track" program, an accelerated training and development program designed to transition individuals into the McDonald's corporate structure. Although the parties dispute whether plaintiff was qualified for the program, it is uncontroverted that, during plaintiff's entire tenure at McDonald's, the company did not promote a single employee to the fast-track.

Plaintiff further alleges that Radel sexually harassed her during her four years with the company in the form of five hostile comments. Specifically, the first time plaintiff met Radel and indicated her interest in a corporate position, he stated that "[t]he only jobs available at the corporate office would be typing." (Pl.'s Opp'n to Def.'s Mot. for Summ. J., Ex. B at 60–62). In early 1989, Radel told her that she was not "man enough" and "would have to learn how to fight" to keep her job. (Def.'s Mot. for Summ. J., Ex. 1 at 67–68). Later that year, after plaintiff met with Radel to complain about a critical evaluation from her supervisor, Radel remarked, "Well, you are just a bitch and nothing is going to change." (Pl.'s Opp'n to Def.'s Mot. for Summ. J., Ex. B at ·71). In 1992, Radel asked plaintiff to "wear skirts instead of slacks because [her] legs looked better." Id. at 157–58. Finally, at some point during the last year of plaintiff's employment, Radel expressed to her, "As long as you are under me, you will never be promoted and you will never be transferred out of this region. You will stay exactly where you are at." Id. at 230.

Plaintiff claims that a February 1992 personnel dispute served as the backbone for additional discrimination. That month, defendant suspended Lyle Weaver, a Mc-

Donald's manager in Raytown, for misappropriation of store funds. Defendant did not officially notify the store's employees of the suspension; defendant merely told the workers that Weaver had taken personal leave. During Weaver's absence, the store's assistant manager, Judy Harmon, twice contacted plaintiff in the personnel office to inquire into the true reasons behind Weaver's extended leave. Plaintiff asked Tarantino about Weaver's status, who informed her that Weaver had been placed on disciplinary suspension. Plaintiff later relayed this information to Harmon.

Shortly thereafter, Tarantino learned that Harmon and other Raytown McDonald's employees knew of Weaver's suspension. When Tarantino confronted plaintiff about the disclosure of the information, plaintiff admitted that she had confirmed the fact of Weaver's suspension to Harmon. On March 3, 1992, plaintiff also submitted a statement to Radel and Tarantino admitting that she had disclosed the facts of Weaver's suspension to Harmon. Dissemination of confidential personnel information is a violation of company policy. Indeed, shortly after becoming plaintiff's supervisor, Radel had met with plaintiff to discuss his expectation that she would protect the confidentiality of personnel information.

On March 9, 1992, defendant disciplined plaintiff for disclosing what it insisted was confidential personnel information regarding Weaver. The disciplinary action included, inter alia, a three-day suspension without pay, restrictions on her contact with store employees, limited access to the personnel office after normal business hours, and a requirement that she maintain a weekly calendar and phone log. Radel assigned Tarantino to monitor plaintiff's compliance with the disciplinary restrictions.

On August 17, 1992, Tarantino requested that plaintiff meet with her in a conference room at the regional office. Plaintiff responded that before meeting with Tarantino, she was going to get a tape recorder from her car and record the conversation. Tarantino told plaintiff not to get the recorder because no taping of the meeting would be permitted. Plaintiff, ignoring Tarantino's in-

struction, retrieved the recorder and brought it with her to the conference room. As plaintiff walked in the room, Tarantino again warned her, "If you use that tape recorder, you no longer work here and that is insubordination." Despite these unequivocal edicts, plaintiff set the recorder on voice activation and taped the conversation. After Tarantino noticed that plaintiff was taping the meeting, she discharged plaintiff immediately.

Additional facts will be provided as necessary.

## II. Summary Judgment Standards

In deciding a motion for summary judgment, the court must examine any evidence tending to show triable issues in the light most favorable to the nonmoving party. *Bee v. Greaves,* 744 F.2d 1387, 1396 (10th Cir. 1984). A moving party is entitled to summary judgment only if the evidence indicates "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine factual issue is one that "can reasonably be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby. Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be discharged by "showing" that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party, who "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514. Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.*

## III. Discussion

■ Title VII prohibits employers from discharging or otherwise discriminating against employees in the "terms, conditions, or privileges of employment" on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e–2(b). To prevail on her Title VII claim, plaintiff must establish that defendant had a discriminatory motive or intent. *Ortega v. Safeway Stores, Inc.,* 943 F.2d 1230, 1236 (10th Cir.1991). Plaintiff need not prove that defendant's employment actions were motivated solely by an unlawful basis, but she must show that "a discriminatory factor was also a reason for the employer's decision and that it was the factor that made a difference." *Elmore v. Capstan, Inc.,* 58 F.3d 525, 530 (10th Cir.1995) (citation omitted). In other words, plaintiff must establish that she was treated in a manner which, but for a discriminatory motive or intent would have been different. *Clark v. Atchison, Topeka & Santa Fe Ry. Co.,* 731 F.2d 698, 702 (10th Cir.1984).

Plaintiff offers no direct evidence that defendant discriminated against her on an unlawful basis, but relies instead on circumstantial evidence to prove defendant's discriminatory intent. To insure an efficient presentation of circumstantial evidence, the Tenth Circuit has adopted the burden shifting scheme originally set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

■ Under the *McDonnell Douglas* framework, plaintiff first must establish a *prima facie* case of discrimination. If plaintiff succeeds, the burden of production shifts to defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment decisions. *Randle v. City of Aurora,* 69 F.3d 441, 451 (10th Cir. 1995). Assuming defendant meets that burden, all presumptions of discrimination drop from the case. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 507, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993). The burden then shifts back to plaintiff to prove by a preponderance of the evidence that defendant's proffered reasons for the challenged actions are merely a pretext for discrimination. *Randle,* 69 F.3d at 451.

## A. Sex Discrimination

Plaintiff claims that defendant's sex discrimination can be evidenced through (1) the company's decision to pay her a lower salary than her male counterparts; (2) the company's refusal to promote her to a personnel supervisor position or include her in the McDonald's "fast-track" program; and (3) the company's acquiescence in Scott Radel's sexually harassing conduct. The court will address each of these claims in turn.

### 1. Wage Discrimination

■ Plaintiff predicates her wage discrimination claim on both Title VII and the Equal Pay Act. Although the proof schemes under these two statutes share a number of similarities, they are not identical. The primary distinction is that the Equal Pay Act is directed only at wage discrimination between the sexes whereas Title VII prohibits discrimination on the basis of gender, race, color, national origin, and religion. In addition, while the Equal Pay Act forbids only unequal wages for equal work, Title VII makes unlawful a much broader range of discriminatory practices, including hiring, firing, training, and promoting. *Miranda v. B & B Cash Grocery Store. Inc.*, 975 F.2d 1518, 1526 (11th Cir.1992). The Title VII disparate treatment model does relax the requisite standard of similarity between male and female positions. *See Tidwell v. Fort Howard Corp.*, 989 F.2d 406, 411 (10th Cir.1993) (Title VII does not incorporate the "substantially equal work" requirement of the Equal Pay Act) (citing *County of Washington v. Gunther*, 452 U.S. 161, 178–180, 101 S.Ct. 2242, 2252–53, 68 L.Ed.2d 751 (1981)). Only under Title VII, however, must plaintiff prove that defendant *intended* to discriminate against her on an unlawful basis.[1] *Id.; accord Brinkley–Obu v. Hughes Training. Inc.*, 36 F.3d 336, 343 (4th Cir.1994); *Miranda*, 975 F.2d at 1526.

■ With this background in mind, the court now examines the prima facie elements of gender-based wage discrimination under the two statutes. Under Title VII, an employee must show a connection between her gender and an adverse employment decision. She may establish a prima facie case of wage-based sex discrimination by demonstrating that she is female (i.e., a member of a protected class) and that the job she occupied was similar to higher paying jobs occupied by males. *Brinkley–Obu*, 36 F.3d at 343; *Miranda*, 975 F.2d at 1529.

■ To establish a prima facie case of wage discrimination under the Equal Pay Act, a plaintiff must demonstrate that (1) she performed work that was substantially equal to that of male employees in terms of skill, effort, duties, supervision, and responsibilities; (2) she performed her work under similar conditions as her male counterparts; and (3) she received less compensation than her male counterparts working under substantially equal circumstances. *Tidwell*, 989 F.2d at 409 (citing *Corning Glass Works v. Brennan*, 417 U.S. 188, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974)).

■ Plaintiff fails to establish a prima facie case of wage discrimination under either Title VII or the Equal Pay Act. She alleges that she received a lower rate of pay than her male colleagues but fails to identify a single male employee with a salary higher than her own. Plaintiff, in fact, offers nothing to controvert defendant's evidence that she was the highest paid personnel coordinator in the Kansas City region during her tenure at McDonald's. Her wage discrimination claims, therefore, cannot survive.

### 2. Failure to Promote

■ Plaintiff next claims that defendant refused to promote her to a personnel supervisor position or include her in the McDonald's "fast-track" program because of her gender. To state a prima facie case of sex discrimination based on a failure to promote, plaintiff must show that (1) she belongs to a protected group; (2) she applied for and was qualified for the promotion; (3) she was not promoted; and (4) the position either remained open or was filled by someone outside of plaintiff's protected group. *Reynolds*

---

1. For a discussion of additional distinctions between the Equal Pay Act and Title VII not relevant to the instant action, *see Miranda*, 975 F.2d at 1526–27.

*v. School Dist. No. 1,* 69 F.3d 1523, 1534 (10th Cir.1995) (citing *Mohammed v. Callaway,* 698 F.2d 395, 398 (10th Cir.1983)); *Luna v. City and County of Denver,* 948 F.2d 1144, 1147 (10th Cir.1991).

▮ With respect to the personnel supervisor position, plaintiff's sex discrimination claim is easily refuted. In October 1991, several months after plaintiff expressed an interest in the job, defendant hired Kathy Tarantino, a female, as the Kansas City Region's personnel supervisor. Defendant's refusal to promote plaintiff, therefore, was not gender-based.

Defendant's decision not to include plaintiff in the company's fast-track program requires a more detailed analysis. Defendant insists that plaintiff was unqualified for the program because she had no executive level experience. Defendant also contends that it did not select a single employee in the Kansas City Region for the fast-track program during the entire period of time in which plaintiff worked at McDonald's. In response, plaintiff avers that defendant's fast-track program was not reserved for high-level career executives and, in fact, defendant put two store managers—Richard Morris and Lyle Weaver—as well as a crew recruiter—Jim Evans—in the program during her tenure.

Plaintiff's argument suffers from an evidentiary vacuum. With respect to Morris, plaintiff offers a Morris affidavit in which he states that defendant placed him in the fast-track program upon hiring him in 1981. Defendant insists that Morris was merely a store manager and not part of any formal fast-track program. Even if Morris was in such a program, however, that fact does not support plaintiff's prima facie case. Defendant maintains that it did not promote a single employee to the program *during plaintiff's tenure;* a promotion that occurred seven years before plaintiff arrived at the company does not equate to prima facie evidence of sex discrimination.

Evidence on Weaver and Evans is similarly lacking. The court has not found a single reference to Weaver's role in the fast-track program in the exhibits that plaintiff attached to her briefing. Moreover, the only proof plaintiff offers of Evans' inclusion in the fast-track program is her own deposition testimony that Evans told her he was in the program. That statement is pure hearsay. Although plaintiff "need not produce evidence in a form that would be admissible at trial, ... the content or substance of the evidence must be admissible." *Thomas v. IBM,* 48 F.3d 478, 485 (10th Cir.1995) (citations omitted). Evidence premised on inadmissible hearsay "is not suitable grist for the summary judgment mill." *Id.*

### 3. Sexual Harassment

▮ There are two distinct types of sexual harassment recognized under Title VII: quid pro quo discrimination and hostile work environment. *Martin v. Nannie and the Newborns, Inc.,* 3 F.3d 1410, 1414 (1993) (citing *Meritor Sav. Bank v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)). Plaintiff predicates her claims exclusively on the latter category.

▮ To prevail under a hostile work environment theory, plaintiff must demonstrate that sexual conduct had "the purpose or effect of unreasonably interfering with" her work performance or created "an intimidating, hostile, or offensive working environment." *Martin,* 3 F.3d at 1418. Sexual harassment is actionable only if the "workplace is permeated with discriminatory intimidation, ridicule, and insult ... that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys. Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993). In determining whether the conduct complained of is sufficiently severe or pervasive, the court examines such factors as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 23, 114 S.Ct. at 371.

▮ Plaintiff's entire claim rests on five isolated comments of her supervisor, Scott Radel. Other than a single reference to plaintiff's legs, none of the comments can

be characterized as sexual in nature. Nor were any of the remarks accompanied by physical or threatening overtures. The Tenth Circuit has made clear that a plaintiff must demonstrate more than a few isolated comments or incidents to reach the level of pervasiveness necessary to sustain a hostile work environment claim. *Bolden v. PRC Inc.*, 43 F.3d 545, 551 (10th Cir.1994), *cert. denied,* —— U.S. ——, 116 S.Ct. 92, 133 L.Ed.2d 48 (1995). She must show a "steady barrage of opprobrious" sexual comments. *See id.* Plaintiff has made no such showing in the case at bar.

Plaintiff's claim is further belied by the infrequency of the discriminatory conduct that she alleges. The five comments she attributes to Radel occurred over a four-year period. No reasonable person could construe conduct spread out over such a long period of time as indicative of an abusive working environment. *See Huddleston v. Lumbermens Mut. Cas. Co.*, 942 F.Supp. 504, 510 (D.Kan.1996) (plaintiff's allegations of sexual harassment over two-year period lack sufficient frequency to create actionable claim). It is, of course, conceivable that plaintiff *subjectively* perceived Radel's actions as creating a hostile atmosphere. The Supreme Court, however, in an effort to shield employers from having to accommodate the idiosyncratic concerns of overly-sensitive employees, has stated that conduct not "severe or pervasive enough to create an *objectively* hostile or abusive work environment" is not violative of Title VII. *Harris,* 510 U.S. at 21, 114 S.Ct. at 370. This court, in considering the totality of the circumstances and accepting all of plaintiff's allegations as true, finds that Radel's conduct was not sufficiently pervasive or severe to alter the conditions of plaintiff's employment. Accordingly, defendant is entitled to summary judgment on plaintiff's sexual harassment claim.

*B. Race and National Origin Discrimination*

In her second amended complaint, plaintiff alleges that defendant also harassed her on the basis of her race and national origin. Although plaintiff apparently abandons this claim in her opposition to defendant's summary judgment motion, the court will analyze her allegations.

Similar to a sexual harassment claim, a racial/national origin harassment claim requires that plaintiff demonstrate that (1) she was subjected to harassment pervasive or severe enough to alter the terms, conditions, or privilege of employment, and (2) the harassment stemmed from an animus towards her race or national origin. *Bolden,* 43 F.3d at 551 (citing *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 2405–06, 91 L.Ed.2d 49 (1986)). Plaintiff's claim is predicated exclusively on two comments by McDonald's executives made three years apart from each other.

The first comment—Radel's 1989 statement that "Hispanic commercials are made in another part of the country"—is taken completely out of context and in no way supports plaintiff's claim of harassment. Plaintiff's own deposition indicates that Radel made the remark only after plaintiff had noted her positive impression of the company's marketing techniques and suggested that she would be interested in working on such commercials. Viewed objectively, the court sees no racial hostility emanating from this incident.

The second comment of which plaintiff complains is Mark Searle's 1992 remark that he did "not want people like [plaintiff] or [her] kind" working in the restaurants that he managed. This comment offers little support to plaintiff's claim. First, plaintiff concedes that she does not know what Searle meant when he referred to "her kind" and merely speculates that Searle was alluding to her race or national origin. An employee's subjective belief of discrimination is not sufficient to preclude a properly supported summary judgment motion. *Aramburu v. The Boeing Co.,* 112 F.3d 1398, 1408 n. 7 (10th Cir.1997) (citing *Panis v. Mission Hills Bank, N.A.,* 60 F.3d 1486, 1491 (10th Cir. 1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1045, 134 L.Ed.2d 192 (1996)). Second, plaintiff acknowledges that Searle made the comment while reprimanding her for improperly disclosing what he considered to be con-

fidential information. In such a context, it is highly unlikely that the remark was racially-based. Even if Searles did have a racial animus towards plaintiff, however, an employee "must show more than a few incidents of racial enmity" to prevail on a Title VII claim. *Bolden*, 43 F.3d at 551. She must establish "a steady stream of opprobrious racial comments," a hurdle that plaintiff's allegations do not begin to overcome. The court, therefore, finds that summary judgment must be granted to defendant on this claim.

■ In an attempt to salvage her race/national origin discrimination claim, plaintiff sets forth a disparate treatment theory in her opposition to defendant's summary judgment motion. Plaintiff, however, did not include such a claim in her second amended complaint nor did she seek leave of court to add additional claims. At this stage in the litigation, plaintiff may not alter the allegations in her complaint without obtaining prior permission of the court. *See* Fed.R.Civ.P. 15(a). To allow otherwise would prejudice defendant severely inasmuch as it had no opportunity to conduct discovery on the newly asserted claims. Accordingly, plaintiff's disparate treatment claim will not be considered.

### C. Retaliation

Plaintiff next alleges that defendant initiated a pattern of retaliation after she "complained" of race and sex discrimination. Plaintiff contends she registered the complaint in a March 1992 handwritten statement responding to defendant's allegations that she had disseminated confidential information in violation of company policy. In that document, plaintiff stated, "A severe action against me will convince me a pretext has been found by the regional staff to cover what in reality is clear discrimination both as a result of my sex and race." (Def's. Mot. for Summ. J., Ex. 5 at 12).

■ To establish a prima facie case of retaliation under Title VII, plaintiff must show that: (1) she engaged in protected opposition to discrimination; (2) she suffered adverse action from her employer; and (3) there was a causal connection between her

protected activity and her employer's adverse action. *Sauers v. Salt Lake County*, 1 F.3d 1122, 1128 (10th Cir.1993).

■ Under the liberal standards of *Marx v. Schnuck Markets*, 76 F.3d 324 (10th Cir.), *cert. denied*, — U.S. ——, 116 S.Ct. 2552, 135 L.Ed.2d 1071 (1996), the court finds that plaintiff has established the second and third prongs of her prima facie test. Plaintiff, however, is not able to demonstrate that she engaged in protected activity. Although "protected conduct" need not be in the form of an official complaint, an employee may not threaten her way into an actionable retaliation claim. At the time plaintiff submitted the statement to her supervisors, she had no articulable basis upon which to complain of race or sex discrimination. An individual must have a good faith belief of discrimination before engaging in protected activity. *Huddleston*, 942 F.Supp. at 511 (citations omitted). An employee may not simply hold her employer hostage by proclaiming that any adverse employment decision will be construed as discriminatorily motivated.

■ Even assuming, *arguendo*, that plaintiff could establish a prima facie case of retaliation, her claim still must fail for a lack of evidence on defendant's pretext. Defendant insists that it suspended plaintiff for three days in March 1992 and imposed disciplinary restrictions on her activities as a direct result of her improper disclosure of confidential personnel information. Defendant further contends that it discharged plaintiff in August 1992 only after plaintiff ignored repeated requests to put away a tape recorder during a meeting with Kathy Tarantino.

Plaintiff disputes defendant's contention that the information she disclosed about Lyle Weaver's suspension was confidential in nature. Plaintiff maintains that the employees at the Raytown McDonald's where Weaver worked were aware of the reasons for his absence. The court finds this argument unpersuasive. First, plaintiff concedes that the store's assistant manager, Judy Harmon, telephoned plaintiff twice in February 1992 requesting an explanation for Weaver's extended leave. If the true reasons for Weav-

er's absence were common knowledge, no call would have been necessary. Second, even if a number of employees correctly suspected that Weaver had been disciplined for theft of store funds, that fact would not excuse plaintiff's blatant violation of company policy against disclosing (or verifying) confidential personnel information.

 With respect to the tape recorder incident, plaintiff does not dispute that Tarantino instructed her not to record the meeting. Plaintiff concedes, in fact, that prior to initiating the conversation, Tarantino warned her that taping the meeting would be considered insubordinate conduct. Tarantino expressly stated, "If you use that tape recorder, you no longer work here and that is insubordination." Despite these clear orders, plaintiff set her recorder for voice activation and taped the entire discussion. As promised, defendant immediately terminated her employment. Plaintiff now contends that sex and race discrimination were the real motives for her discharge. Pretext may not be established, however, by mere conjecture or speculation. *Morgan v. Hilti,* 108 F.3d 1319, 1323 (10th Cir.1997). Because plaintiff has not cast doubt on defendant's facially nondiscriminatory explanations for its actions, summary judgment is warranted on plaintiff's retaliation claim.

### D. Negligent Infliction of Emotional Distress

 Plaintiff's final claim revolves around her allegation that defendant failed to protect her from discrimination and harassment at the workplace, thereby exposing her to severe emotional distress. Under Kansas law, there can be no recovery for negligent infliction of emotional distress unless a plaintiff demonstrates that she suffered a physical injury as a result of the defendant's negligence. *Humes v. Clinton,* 246 Kan. 590, 792 P.2d 1032, 1038 (1990). The physical injury must occur contemporaneously with or shortly after the incident causing the emotional distress. *Schweitzer-Reschke v. Avnet Inc.,* 874 F.Supp. 1187, 1196 (D.Kan.1995) (citations omitted). The objective of the physical injury rule is to guard against fraudulent or exaggerated emotional distress claims. *Id.* (citations omitted).

 Plaintiff has not presented sufficient evidence that, as a result of defendant's conduct, she suffered emotional distress in conjunction with a physical injury. The only evidence, in fact, relating to her physical injuries is her interrogatory answer stating that at various times from 1975 to the present, she saw a doctor for headaches and back and neck pain. (Def.'s Mot. for Summ. J., Ex. 4 at 13). Nothing in the record suggests that those physical symptoms had any nexus to emotional distress plaintiff may have suffered as a result of perceived harassment or discrimination. Nor were plaintiff's ailments sufficiently severe to maintain a negligent infliction of emotional distress claim. *See Anderson v. Scheffler,* 242 Kan. 857, 752 P.2d 667, 669 (1988) (even if plaintiff sought medical treatment for his symptoms, generalized symptoms such as headaches and insomnia are insufficient to state a cause of action for negligent infliction of emotional distress); *Hopkins v. State,* 237 Kan. 601, 702 P.2d 311, 319–20 (1985) (same).

 Furthermore, assuming plaintiff could prove that she suffered physical injuries contemporaneous with her emotional distress, Kansas would not recognize the tort of negligent infliction of emotional distress in an employment discrimination context inasmuch as adequate remedies at law already exist under the Kansas Act Against Discrimination and the Kansas Workers Compensation Act. See *Schweitzer-Reschke,* 874 F.Supp. at 1197–98; *Followill v. Emerson Elec. Co.,* 234 Kan. 791, 674 P.2d 1050, 1051–52 (1984). Accordingly, summary judgment is appropriate on this claim.

IT IS, THEREFORE, BY THE COURT ORDERED that defendant's motion for summary judgment (Doc. 85) is granted.

Copies of this order shall be mailed to counsel of record for the parties.

**IT IS SO ORDERED.**