**Dawn M. BALLOU, Plaintiff,**

v.

**UNIVERSITY OF KANSAS MEDICAL CENTER, William C. Sturgeon, and Alp Ozhan, Defendants.**

**Civ. A. No. 93–2524–GTV.**

United States District Court, D. Kansas.

Dec. 5, 1994.

See also, —— F.R.D. ——.

**1386**

Stewart M. Stein, Sonya S. Stokes, Buck, Bohm & Stein, P.C., Leawood, KS, for Dawn M. Ballou.

John C. McFadden, Kansas City, KS, for University of Kansas Medical Center, William C. Sturgeon.

David C. Wetzler, Bennett, Lytle, Wetzler, Martin & Pishny, L.C., Prairie Village, KS, Lee M. Smithyman, Smithyman & Zakoura, Chtd., Overland Park, KS, for Alp Ozhan.

### MEMORANDUM AND ORDER

VAN BEBBER, District Judge.

Plaintiff Dawn M. Ballou has sued her employer, University of Kansas Medical Center ("Medical Center"), and two of its managers for employment discrimination on the basis of her sex, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*, and the Kansas Act Against Discrimination, K.S.A. 44–1001 *et seq.* (KAAD). Plaintiff also claims that the Medical Center breached its contractual duty to her, as described in a published employer handbook, by the manner in which it investigated her complaints.

This matter is before the court on summary judgment motions filed by the Medical Center (Doc. 48) and by individual defendant Alp Ohzan (Doc. 50). For the reasons more fully set forth below, the motions are granted in favor of defendants on plaintiff's Title VII sexual harassment claim. In addition, the court is barred from exercising supplemental jurisdiction over plaintiff's state law claims because of Eleventh Amendment immunity and dismisses those claims without prejudice.

### I. Facts

The following facts are either uncontroverted or, where controverted, construed in the light most favorable to the nonmovant plaintiff. Immaterial facts and factual averments not properly supported by the record are omitted.

Plaintiff Dawn M. Ballou is Manager of Collections with the Medical Center's Patient Accounting Department. She was promoted into this newly-created position in March, 1991, by defendants Alp Ozhan and William C. Sturgeon. Prior to her promotion she had been a collector in the same department.

Defendant Alp Ozhan was the Assistant Director of Credit and Collections in the Patient Accounting Department until approximately August, 1992. He had been Ballou's immediate supervisor from August, 1988, until August, 1992. Defendant William C. Sturgeon has been Director of Patient Accounting since April, 1987 and has been Ozhan's direct supervisor since August, 1988.

The events which form the basis of plaintiff's sexual harassment claim began in July, 1991. At that time, defendant Ozhan asked plaintiff to accompany him to the Medical Center's courtyard where he told her: "I know you feel the same way about me as I feel about you." Plaintiff replied that she had a boyfriend and was not interested. Ozhan then asked plaintiff, "What if I were not married?" Plaintiff again stated that she would not be interested. Finally, plaintiff asked, "What if I walked into a bar and came over to you. Would you be interested in me?" Plaintiff again stated that she has never been interested in him, and she then left.

Other incidents occurred beginning in December, 1991, when the department moved to a different location. Defendant Ozhan located plaintiff's work station in a high traffic area where Ozhan passed by 30–40 times daily. Ozhan would often talk with plaintiff when he passed her desk and would sit on her desk and lean close to her. Ozhan frequently stared at plaintiff and his staring made her feel uncomfortable. Also, since moving to the new location plaintiff has observed Ozhan outside the building, in a designated smoking area, when plaintiff arrives in the mornings. Ozhan "gawks" at her and follows her into the building. Ozhan would also insist that plaintiff go outside with him

on breaks, and he often invited himself to have lunch with her.

In February, 1992, plaintiff was hospitalized for surgery and asked that no one from the office call or visit her. Despite this request, Ozhan telephoned her twice to ask if she needed anything and if she would like some company. Both times plaintiff declined the offers. On April 14, 1992, plaintiff received a plant from her boyfriend for her birthday. Upon learning that it was plaintiff's birthday, Ozhan asked plaintiff to kiss him. Plaintiff declined, but allowed Ozhan to shake her hand instead.

Plaintiff also complains that when her boyfriend visited her at work or when she received phone calls from men, Ozhan would come by her desk and interrupt the conversations. She concedes that these interruptions involved work related topics, but she believes that the interruptions were intended to keep plaintiff from talking to other men.

Plaintiff has identified a number of examples in which Ozhan has taken work-related actions that she believes are in retaliation for her refusal to enter into a relationship with him. For example, Ozhan did not consult her regarding the selection of the department's new computer system. Ozhan also failed to seek input from plaintiff regarding raises for employees supervised by plaintiff. Plaintiff also complains that Ozhan has treated her more as a secretary than a member of management by requiring her to spend an inordinate amount of time on clerical duties such as filing, photocopying, and answering the telephone.

On June 2, 1992, plaintiff met with Melvin Williams of the Medical Center's Affirmative Action Department. She complained to him about some of the work-related actions taken by Ozhan. On June 3, 1992, plaintiff met again with Melvin Williams to further discuss her complaints. Mr. Williams advised plaintiff to confront Ozhan directly concerning her complaints and to advise Ozhan that he had "until Monday" to address several of the complaints, such as a modification of the telephone answering system and selection of a personal secretary to perform some of the tasks being performed by plaintiff.

Plaintiff followed Mr. Williams' suggestion and met with Ozhan on June 4, 1992, to discuss her complaints, and to inform Ozhan that he had until Monday to change the phone system and to get a secretary. After the meeting, plaintiff undertook, without Ozhan's knowledge or permission, to have defendant Sturgeon's secretary begin the paperwork necessary to change the phone system. The following day, Ozhan confronted plaintiff about her actions to have the phone system changed and told her that she had gone over his head by telling Sturgeon's secretary to type up the voucher. During the meeting, Ozhan was angry and upset and told plaintiff, "I'm warning you, Dawn, don't push me." This was the harshest interaction between plaintiff and Ozhan during the time they worked together.

On June 9, 1992, plaintiff again met with Melvin Williams and, for the first time, complained that Ozhan had sexually harassed her. Immediately after this complaint was made, Ozhan was temporarily relieved of his duties and removed as plaintiff's immediate supervisor. In August, 1992, the department was reorganized and Ozhan was transferred to another position within the department and relocated to a different building.

## II. Legal Standards

Under Fed.R.Civ.P. 56(c), summary judgment is proper only if the evidence, reviewed in the light most favorable to the plaintiff, the party opposing the motion, demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. *See Deepwater Inv., Ltd. v. Jackson Hole Ski Corp.*, 938 F.2d 1105, 1110 (10th Cir.1991). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be discharged by showing that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). A "material" fact is one "that might affect the outcome of the suit under the governing law," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986), and a "genuine" issue is one for which "the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." *Id.*

Once the moving party has properly supported its motion for summary judgment, "a party opposing ... may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 256. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.*

The substantive law regarding a claim will identify which facts are material in a motion for summary judgment, and only factual disputes that might affect the outcome of the case under governing law will preclude entry of summary judgment. *Id.* at 248, 106 S.Ct. at 2510. In applying this standard, the court views the evidence, and all reasonable inferences derived from the evidence, in the light most favorable to the party opposing the motion. *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990).

### III. Analysis

Plaintiff's amended complaint, filed on September 9, 1994, states the following causes of action:

1. Title VII sexual harassment claim based on hostile work environment;

2. Title VII retaliation claim;

3. Kansas Act Against Discrimination sexual harassment and retaliation claims; and

4. Breach of contract claim based on the Medical Center's alleged failure to follow the procedures contained in its employee handbook after plaintiff filed her sexual harassment complaint.

Claims (1), (2), and (3) above are apparently asserted against all three defendants, while the breach of contract claim appears to apply only to the Medical Center.

The pending summary judgment motions address all claims except the Title VII retaliation claim. Defendants contend that Ozhan's conduct did not constitute sexual harassment because it was not sufficiently severe or pervasive so as to create a hostile or abusive working environment. In addition, the Medical Center argues that it cannot be held liable for Ozhan's actions because it was unaware of the alleged sexual harassment until plaintiff filed her complaint, and once made aware of the allegations it acted quickly and effectively to resolve the situation. Finally, the defendants contend that plaintiff's two state law claims are barred by reason of the Eleventh Amendment.[1]

The court concludes that plaintiff's Title VII hostile work environment claim must be dismissed because the evidence is not sufficient to establish that defendants' actions created a hostile or abusive work environment. In addition, the state law claims must be dismissed because they are barred by the Eleventh Amendment.

### A. Title VII Sexual Harassment

Plaintiff's sexual harassment claim is based on Title VII's prohibition that "[i]t shall be an unlawful employment practice for an employer ... to discriminate against any individual with respect to his ... terms, conditions, or privileges of employment, because of such individual's ... sex." 42 U.S.C. § 2000e–2(a)(1). The Supreme Court has held that "when a supervisor sexually harasses a subordinate because of a subordinate's sex, that supervisor 'discriminate[s]' on the basis of sex." *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986).

 Hostile work environment harassment arises when sexual conduct "has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." *Vinson,* 477 U.S. at

---

1. Defendants also argue that plaintiff's claims for compensatory and punitive damages under Title VII arising from conduct occurring prior to November 21, 1991, the effective date of the 1991 Amendments to the Civil Rights Act, should be dismissed. Because of the court's finding that plaintiff's hostile work environment claim should be dismissed, this point need not be resolved. The remaining Title VII claim is based on retaliation, and all the relevant actions to support that claim occurred after November 21, 1991.

65, 106 S.Ct. at 2405 (quoting 29 C.F.R. § 1604.11(a)). "For sexual harassment to be actionable, it must be sufficiently severe or pervasive 'to alter the conditions' of [the victim's] employment and create an abusive working environment." *Vinson,* 477 U.S. at 67, 106 S.Ct. at 2405 (quoting *Henson v. City of Dundee,* 682 F.2d 897, 902 (11th Cir.1982)). Casual or isolated manifestations of a discriminatory environment are not sufficient to demonstrate a hostile working environment under the law. *Hicks v. Gates Rubber Co.,* 833 F.2d 1406, 1414 (10th Cir.1987). The conduct need not, however, be "clearly sexual in nature;" rather, it is sufficient if the conduct amounts to unequal treatment which, but for plaintiff's sex, would not have occurred. *Hicks,* 833 F.2d at 1415 (citing *McKinney v. Dole,* 765 F.2d 1129, 1138–39 (D.C.Cir.1985)).

In *Harris v. Forklift Systems, Inc.,* — U.S. ——, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993), the Supreme Court identified a number of factors relevant to the question of whether a work environment was hostile or abusive within the meaning of Title VII. All of the circumstances must be considered, but the Court specifically stated that the relevant factors should include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at ——, 114 S.Ct. at 371.

The *Harris* Court also makes clear that courts are to evaluate the relevant factors from both an objective and subjective viewpoint:

Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview. Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation.

*Id.* at ——, 114 S.Ct. at 370.

In this case, the objective part of the test is not met. The evidence, even when viewed in the light most favorable to plaintiff, does not establish that a reasonable person would have found the work environment to be hostile or abusive.

Plaintiff has pointed to several incidents which occurred beginning in July, 1991, and which could be broadly characterized as being sexual in nature, to support her claim of hostile work environment. The first event was the incident in the courtyard when Ozhan indicated to plaintiff some interest in starting up a relationship with her. After plaintiff stated that she was not interested, Ozhan did not pursue the matter. Plaintiff has not identified any other incident in which Ozhan propositioned her or even asked to see her socially.

The next event which could be taken to indicate that Ozhan had some sexual interest in plaintiff occurred when he telephoned her while she was hospitalized. In that instance, however, plaintiff does not allege that Ozhan made any improper comments, only that he inquired about her condition and asked whether she wanted to have company. Even taking into account plaintiff's earlier request that no one from the office call or visit her, it cannot be found that these phone calls were objectively offensive or would cause any significant amount of distress.

The final such event occurred on plaintiff's birthday when Ozhan asked plaintiff to kiss him. She refused, offered him a handshake instead, and he did not pursue the matter. While Ozhan's comment was no doubt inappropriate, especially in a work setting, it does not rise to the level of pervasive harassment.

Of course, plaintiff is not alleging that any one of these incidents alone would constitute sexual harassment, but rather that Ozhan's conduct as a whole, over a period of time, created a hostile work environment. Plaintiff cites the placement of her desk in an area where Ozhan would walk by 30–40 times each day, the fact that he stared at her, and that he was often outside smoking when she arrived for work and then followed her into the building. While these actions may have caused plaintiff to feel uncomfortable, there is no indication that this conduct would cause

a reasonable person to find such a work environment hostile and abusive.

Although plaintiff alleges that Ozhan made her feel uncomfortable by sitting on her desk and leaning close to her, she never alleges any inappropriate physical contact. She complains that he would often find reason to speak with her during the day, but she concedes that these discussions were work-related and that Ozhan made no improper or offensive comments. After Ozhan was rebuffed in the courtyard, he never again asked plaintiff about her interest in him. Similarly, after she told him while in the hospital that she did not want visitors, he did not pursue the issue.

Moreover, even if the court assumes, as plaintiff believes, that Ozhan treated her poorly with regard to certain work-related actions, the evidence does not suggest that this behavior was related to her sex or that it rendered her environment hostile. It may have been poor management practice for Ozhan to fail to consult plaintiff on the purchase of computer equipment, or to recommend raises for employees supervised by plaintiff without seeking plaintiff's input, or to assign to plaintiff an inordinate amount of clerical work, but there is no evidence that these actions created an abusive work environment. Ozhan's performance as a manager may have made plaintiff's work unpleasant, but the evidence fails to show that his behavior was more than "merely offensive." *Harris*, —— U.S. at ——, 114 S.Ct. at 370.

Even if all of plaintiff's allegations in support of her hostile work environment sexual harassment claim are accepted as true, the court finds that the alleged conduct was not sufficiently pervasive or severe to alter the conditions of her employment. In reaching this conclusion, the court has considered the totality of the circumstances as presented and supported by the evidence. Thus, the court finds that the motions for summary judgment by the defendants on plaintiff's hostile work environment sexual harassment claim should be granted.[2]

## B. State Law Claims

Plaintiff has also asserted state law claims based on a violation of the Kansas Act Against Discrimination, K.S.A. 44–1001 *et seq.* ("KAAD"), and breach of contract. Defendants assert that the plaintiff's state law claims are barred by the Eleventh Amendment and the court therefore lacks jurisdiction over those claims.

■ "The Eleventh Amendment imposes a constitutional limitation on the jurisdiction of Article III courts."[3] *Mascheroni v. Board of Regents of Univ. of Cal.*, 28 F.3d 1554, 1557 (10th Cir.1994) (citing *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 98, 104 S.Ct. 900, 906–07, 79 L.Ed.2d 67 (1984)). The Eleventh Amendment bars private suits against the states and state agencies "seeking to impose liability which must be paid from public funds." *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 1356, 39 L.Ed.2d 662 (1974). The parties agree that the Medical Center, a part of the University of Kansas, is a state agency for Eleventh Amendment purposes. *See also Billings v. Wichita State Univ.*, 557 F.Supp. 1348, 1350 (D.Kan.1983) (noting well-established conclusion that universities established by the State of Kansas function as alter ego agencies of the state and share the state's Eleventh Amendment immunity).

■ The court concludes that plaintiff's state law claims against the Medical Center are barred by the Eleventh Amendment. The Tenth Circuit recently addressed this issue in connection with Title VII and state law claims brought against the Board of Regents of the University of California. *See Mascheroni*, 28 F.3d 1554. In *Mascheroni*, the court determined that the Board of Re-

---

**2.** Based on the court's conclusion that plaintiff has failed to establish a hostile work environment, it is not necessary to address the Medical Center's argument that it is not liable because it took prompt and appropriate remedial action after plaintiff brought her complaints to the Medical Center's attention.

**3.** The Eleventh Amendment states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI.

gents was an arm of the state for Eleventh Amendment purposes and that there had been no abrogation or waiver of immunity. *Id.* at 1559–60. The court then concluded the state law claims were barred by the Eleventh Amendment. *Id.* at 1560. The situation in this case is identical, and it is clear that the state law claims against the Medical Center must be barred.

■ There is no indication in this case that the State of Kansas has waived its Eleventh Amendment immunity. Plaintiff points out that the KAAD in § 44–1002 includes in its definition of employer "any institution, department or agency of the state of Kansas." Thus, Kansas has waived its *sovereign* immunity for claims brought under the KAAD, but that waiver does not amount to a waiver of Kansas' *Eleventh Amendment* immunity. *See Seibert v. State of Okla. ex rel. Univ. of Okla. Health Sciences Ctr.*, 867 F.2d 591, 595 (10th Cir.1989).

■ Plaintiff argues that (1) Congress abrogated Eleventh Amendment immunity for Title VII claims, and (2) federal courts may accept supplemental jurisdiction over state law claims when original jurisdiction is based solely on Title VII, so therefore (3) the state law claims are not barred by the Eleventh Amendment. Unfortunately, plaintiff's conclusion does not necessarily follow from her premises. While it is true that immunity has been abrogated and Title VII claims may be brought against states, *see Barger v. State of Kansas*, 630 F.Supp. 88, 89 (D.Kan.1985), and while it is also true that the court may exercise supplemental jurisdiction over state law claims when original jurisdiction is based on Title VII, *see* 28 U.S.C. § 1367, it does not follow that such state law claims are therefore not barred by Eleventh Amendment immunity.

The *Mascheroni* Court specifically rejected this argument when it stated: "That [plaintiff] attaches these state law claims to the Title VII complaint under the doctrine of supplemental jurisdiction does not render the Eleventh Amendment inapplicable because the Supreme Court has held that 'neither pendent jurisdiction nor any other basis of jurisdiction may override the Eleventh Amendment.'" 28 F.3d at 1559 (quoting

*Pennhurst*, 465 U.S. at 121, 104 S.Ct. at 919). The only possible conclusion is that the Eleventh Amendment bars plaintiff's state law claims against the Medical Center.

■ While plaintiff's breach of contract claim appears to be asserted against only the Medical Center, the KAAD claims are brought against all defendants, including Ozhan and Sturgeon. A suit against a state official in his official capacity is not a suit against the official but rather a suit against the official's office. *Brandon v. Holt*, 469 U.S. 464, 471, 105 S.Ct. 873, 877–78, 83 L.Ed.2d 878 (1985). As such, it is no different from a suit against the state. *See Kentucky v. Graham*, 473 U.S. 159, 165–66, 105 S.Ct. 3099, 3104–05, 87 L.Ed.2d 114 (1985). Thus, the Eleventh Amendment also prohibits a party from bringing a supplemental jurisdiction state law claim in federal court against a state official acting in his official capacity. *Pennhurst*, 465 U.S. at 119–21, 104 S.Ct. at 918–19.

The KAAD claims against defendants Ozhan and Sturgeon are brought in their official capacities only. In reaching this conclusion, the court notes that KAAD's statutory scheme is analogous to Title VII's. "The Kansas Supreme Court has analogized an action under the KAAD to an action under Title VII." *Best v. State Farm Mut. Auto. Ins. Co.*, 953 F.2d 1477, 1479 (10th Cir.1991); *see also Carreno v. IBEW Local Union No. 226*, Civ. No. 89–4083–S, 1990 WL 159199 at *4 n. 1 (D.Kan. Sept. 27, 1990) ("Kansas courts have applied Title VII standards to the KAAD.").

A plaintiff claiming discrimination under Title VII may not hold an individual personally liable for any violations of Title VII that the individual may be found to have committed. "The relief granted under Title VII is against the *employer*, not individual employees whose actions would constitute a violation of the Act." *Sauers v. Salt Lake County*, 1 F.3d 1122, 1125 (10th Cir.1993) (quoting *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir.1991)). Similarly, the court finds that plaintiff's KAAD claims against Ozhan and Sturgeon are based on alleged actions those defendants took in their official capacities.

Therefore, the Eleventh Amendment immunity bar applies to the individual defendants as well as the Medical Center.

### IV. Conclusion

Summary judgment is granted in favor of defendants on plaintiff's Title VII sexual harassment claim. The alleged conduct which forms the basis for this claim was not sufficiently severe or pervasive to alter the conditions of plaintiff's employment.

Summary judgment is also granted in defendants' favor on plaintiff's supplemental jurisdiction state law claims. These claims are barred by the Eleventh Amendment and the court is without jurisdiction to hear them. They will therefore be dismissed without prejudice.

The only cause of action remaining for trial is plaintiff's Title VII retaliation claim.

IT IS, THEREFORE, BY THE COURT ORDERED that the summary judgment motions filed by the University of Kansas Medical Center (Doc. 48) and Alp Ozhan (Doc. 50) are granted.

IT IS SO ORDERED.