Michele McCRACKIN, Plaintiff,

v.

LABONE, INC., Defendant.

No. 94–2494–KHV.

United States District Court,
D. Kansas.

Sept. 26, 1995.

---

Albert E. Grauberger, Kansas City, KS, and Maria L. North–Harris, Basil L. North, Jr. & Associates, Kansas City, MO, for plaintiff.

Julia Riggle McKee and C. Brooks Wood, Hillix, Brewer, Hoffhaus, Whittaker & Wright, L.L.C., Kansas City, MO, for defendants.

### ORDER

VRATIL, District Judge.

This case comes before the Court on *Defendant's Motion for Summary Judgment* (Doc. # 33), pursuant to Rule 56(b) of the Federal Rules of Civil Procedure. For the reasons set forth below, this motion is sustained.

### Factual Background

Plaintiff Michele McCrackin worked as a message center operator for defendant LabOne, Inc. from March, 1994 to July 27, 1994. Prior to that time, plaintiff had worked for a period of three years as a data entry operator in LabOne's applicant record entry department. Nathan Bratcher supervised the operators in the message center in which plaintiff worked.

Defendant maintains an "open door" policy through which employees may address their work-related grievances, and it provides employees a handbook detailing the appropriate procedures for lodging a complaint. The handbook encourages employees to address disputes with their immediate supervisors first. If consultation with an immediate supervisor does not resolve the problem, the employee is urged to bring the problem to the attention of upper management through defendant's *Grievance Guidelines*. Defendant also maintains a policy against sexual harassment, and encourages employees to report violations, either to their supervisors or through the *Grievance Guidelines*. All employees, including plaintiff, acknowledge receipt of the handbook.

On July 21, 1994, Bratcher helped himself to a bag of candy on plaintiff's desk while plaintiff was on break. Upon learning that he had done so, plaintiff became very upset and told Bratcher that he should keep the candy. Shortly thereafter, Bratcher returned to plaintiff's cubicle and tossed the bag of candy, which hit a credenza next to plaintiff and fell to the floor. Plaintiff believed that Bratcher threw the candy at her head and became even more upset. Plaintiff had recently learned that her father had throat cancer, and at the time, she was undergoing artificial insemination treatments in an attempt to become pregnant.

Plaintiff promptly reported the candy incident with Bratcher to Bill Thrower, defendant's Vice President of Communications and Bratcher's supervisor. At the time she reported the incident, she mentioned no other complaints about Bratcher. In particular, she made no mention of any touching or other unwanted physical contact with Bratcher. After this meeting, Thrower met with Bratcher and told him to apologize to plaintiff. Bratcher did so the next day, although plaintiff believed the apology was sarcastic.

The day after the candy incident, Plaintiff met with Thrower and Judy Von Feldt, defendant's Vice President for Human Resources. During this meeting, plaintiff complained that on three or four occasions, Bratcher had startled her by coming up behind her and touching her shoulders. She also complained that he had once run his fingers on her back. Each time, plaintiff told Bratcher not to touch her again. Von Feldt and Thrower told plaintiff that they would investigate her complaints and discuss their findings later. Plaintiff then took the rest of the day off.

During the course of their investigation, Thrower and Von Feldt interviewed Nathan Bratcher. He indicated that he had only touched plaintiff's shoulder in order to get her attention. The managers reported the results of their investigation to plaintiff on

July 27, 1994. They told her that Bratcher would not be touching her, again, and they encouraged her to report any additional problems. They also suggested changes in plaintiff's work area and equipment so that she would not be startled by someone coming up behind her, but they did not propose any change in Bratcher's behavior other than cautioning him not to touch plaintiff. Plaintiff agreed to these recommendations, but an hour later returned to offer her resignation.

### Discussion

■ Summary judgment is appropriate when the evidence indicates that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the initial burden of demonstrating the absence of genuine issues of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-moving party to present disputed facts that might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The Court must then determine if there are any genuine issues of fact that may be resolved in favor of either party and therefore must be resolved by the trier of fact. *Id.* at 250, 106 S.Ct. at 2511. In making this inquiry, this Court must construe all facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986) (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)).

In *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 66, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986), the Supreme Court held that a plaintiff may establish a violation of Title VII of the Civil Rights Act of 1964 by proving that discrimination based on sex has created a hostile or abusive work environment. The Court carefully noted, however, that not every form of offensive conduct renders a workplace hostile or abusive; the conduct must be so severe or pervasive as to alter the conditions of the plaintiff's employment and create an abusive work environment. *Id.* at 67, 106 S.Ct. at 2405–06 (citing *Henson v. Dundee,* 682 F.2d 897, 904 (11th Cir.1982)).

■ In *Harris v. Forklift Sys., Inc.,* — U.S. ——, ——, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993), the Court set forth a two-part test to determine whether alleged conduct has created a hostile or abusive workplace. First, the conduct must create a work environment that is objectively hostile or abusive to a reasonable person. Second, the plaintiff must subjectively view the environment as hostile or abusive. *Id.* The Court acknowledged that these are factual determinations, warranting an inquiry into the totality of the circumstances. To aid courts in making this determination, the Court suggested a number of relevant factors, such as the frequency of the conduct, its severity, whether the conduct is physically threatening or merely consists of an offensive utterance, and whether the conduct unreasonably interferes with the plaintiff's work performance. *Id.* at ——, 114 S.Ct. at 371.

■ In the instant case, plaintiff alleges that Bratcher's conduct over a three month period created a hostile and abusive working environment. However, even viewed in a light most favorable to plaintiff, this Court finds that Bratcher's conduct does not rise to the level of a violation of Title VII. First, the candy incident was clearly not conduct based on plaintiff's sex. Although Title VII does not require the conduct upon which an action is predicated to be explicitly sexual in nature, *see Hicks v. Gates Rubber Co.,* 833 F.2d 1406, 1415 (10th Cir.1987), the language of Title VII statute prohibits "an employer ... [from] discriminat[ing] against any individual ... *because of such individual's sex....*" 42 U.S.C. § 2000e–2(a)(1) (1988) (emphasis added).

■ Not even the most liberal reading of the record of this case would suggest that the candy incident was harassment based on plaintiff's sex. If Bratcher threw the bag of candy at plaintiff's head, it was a rude and unprofessional action; plaintiff never alleges, however, and the record does not indicate, that Bratcher's actions were directed at plaintiff based on her sex. Therefore, even if

this single incident created an objectively hostile work environment, which is doubtful, the conduct does not fall within the purview of Title VII.

The allegations of physical touchings present a more difficult question. Under *Harris,* the conduct in question must create an environment that is hostile or abusive to a reasonable person. *Harris,* —— U.S. at ——, 114 S.Ct. at 370.

To support its assertions that Bratcher's conduct did not create an objectively hostile environment, defendant cites cases of egregious conduct not found to be sufficiently abusive. In *Schweitzer–Reschke v. Avnet, Inc.,* 874 F.Supp. 1187 (D.Kan.1995), the defendant's inappropriate conduct included graphic inquiries into the plaintiff's sex life and suggestions that she wear a shorter skirt or do "what she had to do" in order to obtain favorable price quotes for the company. *Id.* at 1191. The court found that even in the totality of the circumstances, the plaintiff did not meet her burden on summary judgment to show that the misconduct was so severe that it altered her conditions of employment.

Furthermore, defendant cites *Ballou v. University of Kansas Medical Center,* 871 F.Supp. 1384 (D.Kan.1994). In *Ballou,* the plaintiff's manager, *inter alia,* repeatedly tried to initiate a relationship with plaintiff, asked to kiss her on her birthday, and leaned close to her while sitting on her desk. *Id.* at 1389–90. The court acknowledged that the manager's actions made the plaintiff uncomfortable, but the evidence did not show that his behavior was more than merely offensive. *Id.* at 1390.

 In the instant case, plaintiff correctly notes that neither of these cases involved physical contact between the plaintiff and the alleged harasser. Actual physical contact, however, is not a touchstone triggering the applicability of Title VII. *See Ebert v. Lamar Truck Plaza,* 878 F.2d 338 (10th Cir. 1989) (affirming district court finding that alleged unwelcome touching was sparse and not pervasive); *Scott v. Sears, Roebuck &*

*Co.,* 798 F.2d 210 (7th Cir.1986) (plaintiff's working environment was held not to be sufficiently hostile, even though she had been slapped on the buttocks). In cases where courts have found physical contact to constitute harassment, the conduct has usually been much more egregious. *See, e.g., Campbell v. Kansas State University,* 780 F.Supp. 755, 762 (D.Kan.1991) (defendant's conduct in slapping plaintiff's buttocks was "patently abusive"); *Ulrich v. K–Mart Corp.,* 858 F.Supp. 1087, 1091 (D.Kan.1994) (co-worker repeatedly grabbed plaintiff, pressed against her, felt her breasts, and placed his hands between her legs).

Accepting plaintiff's contention that Bratcher squeezed and rubbed her shoulders (as opposed to tapping them to gain her attention), this still does not rise to the level of severity required by Title VII. Plaintiff alleges that Bratcher touched her shoulder at most three or four times and her back once. Over a four-month time frame, this could hardly be said to be pervasive conduct, such that a hostile or abusive work environment arose.

*Harris* requires the Court to look at the totality of the circumstances to determine whether plaintiff's working environment was abusive or hostile. An analysis of the factors cited by the Supreme Court leads this Court to conclude that Bratcher's actions, while they may have been inappropriate in the workplace, do not constitute a violation of Title VII.[1]

**IT IS THEREFORE ORDERED** that *Defendant's Motion for Summary Judgment* (Doc. # 33) be and hereby is sustained.

---

1. Because the Court holds that plaintiff has not established a hostile or abusive working environment, the Court does not address the issues of defendant's notice or its opportunity to correct the situation.