**Tonee BUWANA, Plaintiff,**

v.

**DEPARTMENT OF HIGHER EDUCATION, REGENTS OF THE UNIVERSITY OF COLORADO, UNIVERSITY OF COLORADO AT BOULDER, Defendant.**

**No. CIV. A. 97 N 2147.**

United States District Court,
D. Colorado.

Aug. 20, 1998.

---

**ORDER**

NOTTINGHAM, District Judge.

THIS MATTER is before the court on the "Recommendation of United States Magistrate Judge" filed June 21, 1998. On June 30, 1998, plaintiff filed a response to the magistrate judge's recommendation. Upon review of the recommendation, the response, and the papers submitted concerning the *motion for summary judgment*, I am satisfied that the magistrate judge's recommendation is correct.

Plaintiff raises two sorts of objections to the magistrate judge's recommendation. First, plaintiff takes the position that the recommendation is based on an inadequate record in circumstances where plaintiff has not had an adequate opportunity to undertake discovery. I reject this contention, for two reasons. First, a party who alleges that he cannot present facts essential to justify opposition to a motion for summary judgment must state specific reasons for his position in an affidavit opposing the motion. *See* Fed.R.Civ.P. 56(f). Plaintiff has failed to do so. Second, I reject the argument because the file in this case discloses that both parties have had an adequate opportunity to develop whatever factual record is desired. Plaintiff's conclusory arguments that the record is inadequate and that he needed more discovery do not persuade me otherwise.

On the merits, plaintiff's objections reiterate the factual assertions contained in his papers opposing the motion for summary judgment. In many instances, the factual assertions are plaintiff's conclusions and opinions. In other instances, it appears that plaintiff is intending to rely on inadmissable hearsay evidence. When the case is whittled down to admissable evidence, I am satisfied that there is no claim here. Accordingly, it is

Tonee Buwana, Denver, CO, pro se.

David P. Temple, Denver, CO, for defendant.

**ORDERED** as follows:

1. The magistrate judge's recommendation is ACCEPTED.

2. Plaintiff's motion for summary judgment (filed October 3, 1997) is DENIED.

3. Defendant's motion for summary judgment is GRANTED.

4. The case is DISMISSED. The parties are to bear their own costs (as recommended by the magistrate judge).

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

ABRAM, United States Magistrate Judge.

The Defendant filed a motion for summary judgment on April 30, 1998. The case is a race and gender discrimination case under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. Plaintiff alleges three claims for relief arising out of a six month employment period at the University of Colorado as a student advisor. Plaintiff alleges that the Defendant discriminated against him in violation of Title VII of the Civil Rights Act of 1964 because the Plaintiff was: (1) subject to a discriminatory hostile working environment created by his supervisor at the College of Arts and Sciences; (2) subject to discriminatory and disparate treatment by the Environmental Studies Program staff of the College of Arts and Sciences; and (3) subject to discriminatory and disparate treatment by the Human Resources Department of UC–Boulder. Defendant moves for a summary judgment on each of the Plaintiff's three claims for relief.

### I. *Background*

Plaintiff Tonee Buwana is a forty-eight year old, Colorado resident that worked at UC–Boulder from February 13, 1989 until resigning on Sept. 5, 1997. (Def.'s Mot. for Summ. J at ¶ 1[filed Apr. 30, 1998][hereinafter "Def.'s Summ. J. Mot."].) The Plaintiff is also an African–American male. *Id.* at ¶ 2. Defendant is the Regents of the University of Colorado, a body corporate. On October 28, 1996, the Plaintiff was transferred to the College of Arts and Sciences ("Arts and Sciences"). *Id.* at ¶ 3. The Plaintiff's new position was as a Student Service Specialist I, which is a student advisor with other administrative duties. *Id.* at 4.

Upon arrival at Arts & Sciences on the 28th, the Plaintiff was told by the Environmental Studies Program staff ("ES program") that a faculty executive committee had decided his services were not wanted, and that his duties were reassigned to a full-time position with the International Affairs Department within Arts and Sciences. *Id.* at ¶ 6. The parties disagree as to whether the Plaintiff's intended position at the College of Arts and Sciences was two part-time positions, half the time with International Affairs and the other half with the ES program, or one position whose responsibilities included both departments. On the same day, Plaintiff was assigned Assistant Dean Karen Bever as his supervisor within Arts and Sciences. *Id.* at ¶ 9. Plaintiff alleges in his first claim for relief that during the approximate six months that Dean Bever was his supervisor, she created a hostile work environment that was discriminatory based on his race and gender (Pl.'s Compl. and Jury Demand at ¶¶ 6–7)([filed Oct. 3, 1997][hereinafter "Pl.'s Compl."].) On April 18, 1997, at Plaintiff's request, Assistant Dean Dale Mood replaced Dean Bever as his supervisor. *Id.* at ¶ 10. Plaintiff contends that the discrimination and hostile environment continued under Dean Mood. (Pl.'s Compl. at ¶ 14; Pl.'s Answers to Def.'s Interrogs. at ¶ 7. Ex. B to Pl.'s Compl. [hereinafter "Pl.'s Answers"].)

On April 24, 1997, Plaintiff began administrative grievance procedures, including university and state personnel grievance procedures. The university grievance committee found unprofessional conduct, but not evidence of discrimination. (Step 3 Grievance Committee Decision at 4). Plaintiff filed a claim with the Equal Employment Opportunity Commission ("EEOC") on September 8, 1997, with the EEOC issuing a Right to Sue letter on

September 12, 1997 that contained no findings of facts or conclusions. (EEOC Charge at 1, Ex. B to Def.'s Summ. J. Mot.; EEOC Right to Sue Letter at 1, Ex. C to Def.'s Summ. J. Mot. at 1). On September 5, 1997, Plaintiff resigned his employment with the university. On October 3, 1997, Plaintiff filed his complaint pro se. (Pl.'s Compl. at 1).

Defendant has moved for summary judgment pursuant to Fed.R.Civ.P. 56(c) on the grounds that there is no genuine issue as to a material fact. The Defendant has submitted an affidavit, Plaintiff's deposition, and Plaintiff's Grievance Appeal letter in support of this motion.

## II. Summary Judgment Standard

Summary judgment is appropriate when the evidence, including affidavits, depositions, answers to interrogatories, and admissions on file, shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). *See also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In reviewing the evidence, the court will view the factual record in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 670–71 (10th Cir.1998). A factual issue is "material" if it is essential under the substantive law applicable to the claim, and "genuine" if there is sufficient evidence such that a reasonable trier of fact could find for the nonmovant. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

If the moving party does not carry the burden of persuasion at trial, the moving party may establish a prima facie case for summary judgment by demonstrating an absence of evidence supporting a material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The nonmovant has the burden of making a sufficient showing as to the existence of an essential element of the action.

*Id.* at 322–23, 106 S.Ct. 2548. The nonmovant may not rely solely on the pleadings, but must identify specific, admissible facts within the record that a rational trier of fact could infer from for the nonmovant. Fed.R.Civ.P. 56(e). *See also Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 888–89, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990); *Martin v. Nannie and the Newborns, Inc.,* 3 F.3d 1410, 1414 (10th Cir.1993).

 Plaintiff has filed his complaint pro se. The courts will construe pro se pleadings liberally so as to do substantial justice. *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). *See also Riddle v. Mondragon,* 83 F.3d 1197, 1202 (10th Cir.1996)(court stating that it will construe plaintiff's pleadings liberally and hold them to a less stringent standard than pleadings by attorneys). The courts will still require the plaintiff allege sufficient facts to support a legal claim. *Id.*

## III. First Claim for Relief—Hostile Work Environment Due to Race and Gender Discrimination

### A. Hostile Work Environment

 Plaintiff contends in his first claim that he was subject to a hostile work environment based on race and gender discrimination. (Pl.'s Compl. at ¶ 16). Title VII prohibits an employer from discriminating against an employee on the basis of sex and race with respect to his "compensation, terms, conditions, or privileges of employment." Title VII of the Civil Rights Act of 1964, § 703(a)(1), *as amended by,* 42 U.S.C. § 2000e–2(a)(1)(1994). To show a hostile work environment based on race discrimination, the plaintiff must show that "under the totality of the circumstances, (1) the harassment was pervasive or severe enough to alter the terms, conditions, or privilege of employment, and (2) the harassment was racial or stemmed from racial animus." *Witt v. Roadway Express,* 136 F.3d 1424, 1432 (10th Cir.1998)(quoting *Bolden v. PRC, Inc.,* 43 F.3d 545, 551

(10th Cir.1994) *cert. denied,* 516 U.S. 826, 116 S.Ct. 92, 133 L.Ed.2d 48 (1995)) (citation omitted). Pervasiveness and severity are independent and equal grounds on which to support Title VII violations. *Witt,* 136 F.3d at 1432 (citing *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)).

■ Under the pervasive prong, the nonmovant must provide sufficient evidence establishing more than a few discriminatory incidents. *Landgraf v. USI Film Prods.,* 511 U.S. 244, 286, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). *See also Bolden,* 43 F.3d at 551. In *Bolden,* the court concluded two alleged discriminatory incidents within a two year period were infrequent. *Bolden,* 43 F.3d at 551. *See also Witt,* 136 F.3d at 1432 (court concluding that in a racial discrimination claim under section 1981 of the Civil Rights Act, two instances of alleged discrimination within an eighteen month period were not enough under the pervasive prong). However, in *Smith,* the court held that six incidents within twenty-three months were pervasive enough. *Smith v. Norwest Financial Acceptance, Inc.,* 129 F.3d 1408, 1415 (10th Cir.1997).

■ The Plaintiff here has alleged multiple incidents of discrimination during the six month period, including: (1) failure to complete a performance plan; (2) failure to return phone calls from him; (3) not submitting a promised letter of recommendation; (4) not setting up and attending requested meetings with him; and (5) not setting up a training plan. (Pl.'s Compl. at ¶ 16). The Plaintiff also asserts these incidents in his answers to Defendant's interrogatories, (Pl.'s Answers), and in his Grievance Appeal letter to the State Personnel Board. (Letter from Buwana to State Personnel Board at 5–6 [hereinafter "Pl.'s Grievance Appeal"].) However, these allegations are gender neutral and nonracial and the Plaintiff has not produced any direct evidence showing otherwise. Although these inactions may constitute bad management practices, they do not by themselves establish discrimination. *See Ballou v. U. Of Kansas Medical Center,* 871 F.Supp. 1384, 1390 (D.Kan.1994).

The alleged incidents must be discriminatory to be actionable. *Bolden,* 43 F.3d at 551. In *Bolden,* the court held that the acts were oppressive, but that the plaintiff had not shown that the comments were discriminatory. *Id.* Additionally, the court noted that the plaintiff had not offered any evidence as to the racial makeup of the workplace that might act as a factor to infer racial animus behind the conduct. *Id.*

The Plaintiff here makes a few references to specific facts that might support allegations of discriminatory motive, including:

(1) The Plaintiff identifies that he was the only African–American male among the twelve Student Service Specialists in Arts and Sciences. (Pl.'s Resp. to Def.'s Summ. J. Mot. at ¶ 5 [filed May 14, 1998][hereinafter "Pl.'s Resp."].)

(2) Plaintiff identifies comments by Mollie Morton of the UC–Boulder Human Resources Department. The Plaintiff states that Mollie Morton informed him that Dean Bever disliked African–American males. (Pl.'s Additional Answers to Def.'s Interrogs., Ex. E to Pl.'s Compl., at ¶ 6 [hereinafter "Pl.'s Additional Answers"].) This comment was made one month prior to Dean Bever being assigned his supervisor. The Plaintiff also cites a comment by Ms. Morton where she is expressing her concern as to his reassignment to Arts & Sciences due to his race and gender. However, Plaintiff's materials do not include any deposition or affidavit from Mollie Morton. Also, Plaintiff does not mention the Mollie Morton comments in his deposition when asked why he believed Dean Bever's conduct was discriminatorily motivated.

(3) The Plaintiff references instances where Dean Bever did not return his calls, but did return a coworker's calls.

(Pl.'s Answers at ¶ 10; Pl.'s Grievance Appeal). But the Plaintiff does not identify specific facts supporting discriminatory intent for this differing treatment.

The Plaintiff's remaining evidence as to the existence of discriminatory intent are general, conclusory statements. The Plaintiff does not specifically reference facts within the record that a trier of fact could infer discriminatory motive from. These include the following:

(1) *As to why Dean Bever did not complete a performance plan:* "Because of what I am, an African American male." (Pl.'s Dep. at 45).

(2) *As to why Dean Bever did not return calls:* "No, *I don't know why.* I feel it is unprofessional that she didn't, and there was really no reason why she couldn't except unless she was trying to be discriminatory toward me or send me some type of message or something. *I don't know." Id.* at 46 (emphasis added).

(3) *As to why she did not submit a letter of recommendation:* "Because I am an African American male. And when you look at the facts in terms of how it was done, that makes me feel like she did that because of who and what I am and only that." *Id.* at 48.

(4) *As to why Dean Bever did not arrange and attend meetings:* "The only reason why I felt those meetings were not set up, they were not established, was because of my race and who and what I am; and I'm a black male." *Id.* at 49.

The Plaintiff also admits that he knows of no other similarly situated persons within Arts & Sciences that were treated differently, and thus might help infer discriminatory motive by Dean Bever. (Pl.'s Dep. at 59). The Plaintiff does not meet his burden of sufficiently establishing discriminatory motive behind the conduct. Therefore, Dean Bever's conduct does not fall within the pervasive prong of the hostile work environment test.

In the alternative, the plaintiff can establish a hostile work environment under the severity prong if the harassment affected the terms, conditions, or privileges of employment. *Meritor,* 477 U.S. at 67, 106 S.Ct. 2399 (citation omitted). The conduct must be severe enough to create a subjectively and objectively hostile environment. *Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 672–73 (10th Cir.1998)(citing *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21–22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). When determining if the acts constitute an objectively hostile environment, the court will look at all the circumstances, including the frequency of the discriminatory conduct, the context of the conduct, and whether the conduct was humiliating or threatening. *Harris,* 510 U.S. at 23.

First, the victim must subjectively believe that the discriminatory acts created a hostile or abusive working environment. *Id.* at 21, 114 S.Ct. 367. In *Witt,* the court ruled that there was no subjective belief by the plaintiff because the plaintiff had failed to identify specific facts supporting his contention. *Witt,* 136 F.3d at 1432. Also, the court noted that the plaintiff's own testimony stating that after hearing one of the discriminatory slurs, the plaintiff "shrugged it off and walked away," further illustrated a lack of subjective belief. *Id.* at 1433. However, in *Smith,* the court concluded the plaintiff had established the subjective requirement by identifying evidence showing she believed the sexual comments were intolerable, publicly made, and caused humiliation and loss of self-respect. *Smith,* 129 F.3d at 1413.

Within the record, the Plaintiff asserts three specific reasons why he believed the environment was hostile. The Plaintiff states in his deposition that he was viewed and treated differently by others. (Pl.'s Dep. at 50). In his grievance appeal letter, the Plaintiff asserts that he felt alienated and isolated. (Pl.'s Grievance Appeal at 5). The Plaintiff also identifies in the letter an incident where the other staff

members of the Office of Financial Aid ridiculed him, but this incident was before being assigned to Dean Bever. *Id.* at 3.

However, these are conclusory allegations and the Plaintiff does not identify any specific instances of when and how he was viewed or treated differently by others while assigned to Dean Bever. Also, the Plaintiff does not identify any instances of public humiliation, or where he had to leave the work environment because of the discriminatory conduct. In his deposition, the Plaintiff admits that the conduct did not result in a loss of pay or promotion status. (Pl.'s Dep. at 50). Therefore the Plaintiff has not met his burden of identifying facts that could be reasonably inferred to establish his subjective belief that the work place was hostile.

The second requirement is that under all the circumstances, the discriminatory conduct must also be objectively severe enough that a reasonable person would find the work environment hostile. *Harris*, 510 U.S. at 21, 114 S.Ct. 367. In *Bolden*, the court concluded that the objective requirement was not met because the workplace tormenting and taunting was not discriminatory. *Bolden*, 43 F.3d at 551. In *Ballou*, the court concluded that bad management practices that included not soliciting the plaintiff's input and assigning the plaintiff inordinate amounts of work, were not pervasive or severe enough by themselves. *Ballou*, 871 F.Supp. at 1390. However, in *Smith*, the court concluded the plaintiff had established the objective requirement by offering evidence of numerous incidents of sexual discrimination towards her, that the work place was small resulting in public humiliation, and that there was evidence of racial discriminatory conduct towards others also. *Smith*, 129 F.3d at 1413–14.

The Plaintiff does not identify any specific instances of public humiliation due to the conduct. Also, he does not offer any evidence as to the size of the office that might assert the existence of public

humiliation, the changes to the smaller office came after Dean Mood became his supervisor. (Pl.'s Additional Answers at ¶ 7). Further, the inactions of not completing a training plan, not setting up meetings, and not completing a performance plan are not supported by any evidence as to how these inactions were hostile. Additionally, the Plaintiff admits the conduct did not result in a change in pay or promotion status. (Pl.'s Dep. at 50). Therefore, since the Plaintiff has not identified specific instances of discriminatory acts besides the general assertion that he was viewed and treated differently, he has not met his burden of showing that the work environment was objectively hostile.

### III. The Second and Third Claims of Discrimination and Disparate Treatment

Plaintiff's second claim alleges that the ES Program staff discriminated and used disparate treatment when they denied him the position. (Pl.'s Compl. at ¶ 22). The third claim is that the UC–Boulder Human Resources Department used discriminatory and disparate treatment by not intervening in the reassignment, and by not notifying him of changes to his Position Description Questionnaire ("PDQ"). (Pl.'s Compl. at ¶ 27). The Defendant contends that the second and third claims should not survive summary judgment since the Plaintiff does not sufficiently establish a prima facie case for disparate treatment. *Id.* at 9.

A plaintiff can infer discriminatory intent under Title VII by showing disparate treatment, with the required discriminatory motive being inferred from the differences in treatment. *Hazen Paper Company v. Biggins*, 507 U.S. 604, 609, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993) (citations omitted). The method is applied when alleging employment discrimination due to failure to promote, due to a demotion or reassignment, termination, or due to the elimination of a position. *Hooks v. Diamond Crystal Specialty Foods*, 997

F.2d 793 (10th Cir.1993), *overruled in part on other grounds, Buchanan v. Sherrill,* 51 F.3d 227 (10th Cir.1995). However, unexplained differences in treatment are not per se illegal. *EEOC v. Flasher,* 986 F.2d 1312, 1319 (10th Cir.1992).

The Plaintiff alleges that the conduct by the ES Program and the Human Resources staff concerned the reassignment to a full-time position with International Affairs. (Pl.'s Compl. at ¶¶ 22, 27). The Defendant does not articulate an explanation for the reassignment decision, only that the Plaintiff's services were not wanted. (Def.'s Summ. J. Mot. at ¶ 6). However, the Plaintiff himself articulates that he believed the reason was because the Committee had used false information from an outside source that concerned his job performance:

> I allege that the Environmental Studies Program Staff, Carol Watson, Carol Kerns, and the faculty Executive Committee had a meeting based on erroneous information acquired from a source outside the College. This meeting *called into question my job performance,* which resulted in the Executive Committee voting against me being allowed to work in the program. This action caused a conflict with my position as defined by Human Resources and my PDQ in addition to causing discriminatory and disparate treatment.

(Pl.'s Answers at ¶ 11)(emphasis added).

 Reassignments can be discriminatory demotions if the employment decision adversely affects the plaintiff. *Hooks,* 997 F.2d at 799. Therefore, under *McDonnell Douglas,* to establish a prima facie case for discrimination due to the reassignment, the Plaintiff must show that he was: (1) a member of a protected class; (2) adversely affected by the employment decision; (3) qualified for the position at issue; and (4) replaced by a person outside the protected group. *Hooks,* 997 F.2d at 799 (quoting *Branson v. Price River Coal Co.,* 853 F.2d 768, 770 (10th Cir.1988)). *See also McDonnell Douglas Corp. v.*

*Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

 The Plaintiff does not assert, nor does the evidence indicate, that the ES Program position was subsequently filled by a person outside the protected class, the fourth element. In his deposition, the Plaintiff states that he was not aware of anyone else similarly situated within Arts and Sciences that was treated differently. (Pl.'s Dep. at 59). Therefore, it can be inferred that if the ES position was subsequently filled, the person was not outside of a protected group since this would constitute differing treatment of similarly situated personnel.

The Plaintiff also failed to establish the second element that the reassignment adversely affected him. Establishing that the reassignment was a demotion requires showing that there was a reduction in pay, rank, responsibility, or requirement to use a lesser degree of skill. *Hooks,* 997 F.2d at 799 (citations omitted). In *Hooks,* the plaintiff failed to show that the reassignment adversely affected him because he did not produce evidence that he was paid less or had less responsibility, and because the evidence indicated he was probably paid more. *Id.*

The Plaintiff here also does not allege any facts showing that he was adversely affected by the decision. He admits that the reassignment did not result in any reduction in pay, rank, or responsibility. (Pl.'s Dep. at 50). Additionally, the decision did not result in him working less hours because he began working full-time with International Affairs instead. The Plaintiff has failed to show any disparate impact since he did not establish how he was treated less favorably than similarly situated individuals outside his protected group. *See Mosley v. Pena,* 100 F.3d 1515 (10th Cir.1996); *Lowe v. Angelo's Italian Foods, Inc.,* 87 F.3d 1170, 1175 (10th Cir. 1996). Therefore, the second and third claims concerning the reassignment do not survive summary judgment.

**1148**

The Plaintiff has shown that he was unhappy at work and resigned. However, being an unhappy employee does not create an actionable claim of constructive discharge. *Bolden*, 43 F.3d at 552. In his deposition and brief, the Plaintiff has failed to present sufficient evidence of race discrimination and disparate treatment. His reassignment to a different position resulted in no loss of pay or responsibility.

THEREFORE; IT IS RECOMMENDED that the Defendant's Motion for Summary Judgment be granted with the parties to assume their own costs.

FURTHER, IT IS ORDERED that pursuant to Fed.R.Civ.P. 72(b), the parties have ten (10) days after service hereof to serve and file written, specific objections to the findings of fact, conclusions of law, or recommendations of the Magistrate Judge with the District Judge assigned to the case. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file such written specific objections to the findings of fact, conclusions of law and recommendations of the Magistrate Judge as set forth in this document **will bar** the party from a *de novo* determination by the District Judge. *United States v. Raddatz*, 447 U.S. 667, 676–83, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980). Additionally, the failure to file written specific objections to the findings of fact, conclusions of law or recommendations of the United States Magistrate Judge in this document within ten (10) days after being served with a copy **will bar** appellate review of the findings of fact, conclusions of law or recommendations of the Magistrate Judge. *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Talley v. Hesse*, 91 F.3d 1411 (10th Cir.1996).

June 21, 1998.